## Matthews, Appellant, *v.* Philadelphia & Reading R. R.

*Negligence—Railroads—Safety gates—Trespasser.*

Safety gates, which should be closed in case of danger, are an invita- · tion to the traveler on the highway to cross, and while this fact does not relieve him from the duty of exercising care, it is a fact for the consideration of the jury in determining whether he exercised care according to the circumstances; but this rule does not apply where the person injured was not a traveler on the public highway crossing the railroad, but reached the place of danger by walking along the railroad.

*Negligence—" Stop, look and listen "—Contributory negligence.*

Plaintiff's husband was killed at a public crossing where the railroad company operated four tracks. At the crossing were plank sidewalks for foot passengers. The company maintained safety gates on both sides of the crossing, and also employed a watchman. The deceased with some friends went upon the roadbed of the company about a square from. the crossing, and walked upon the railroad to the plank sidewalk on the west side of the street. Here he stopped for a couple of seconds to listen for trains. Hearing none he separated from his companions, and walked on the railroad to the plank walk on the east side of the street. A train was standing on that side of the street, and he turned to walk on the plank footway across the tracks; as he stepped off the track where the train was standing to the next track, he was struck by a locomotive coming towards him on that track, and killed. No signal was given by the train; the gates were not closed; and the watchman was in his box. It also appeared that it was a dark and rainy day, and that the steam from the standing locomotive settled near the ground obstructing the sight. *Held*, that a compulsory nonsuit was properly entered.

Argued March 21, 1894. Appeal, No. 201, Jan. T., 1894, by plaintiff, Margaret Matthews, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1890, No. 537, entering compulsory nonsuit. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Trespass for death of plaintiff's husband. Before BIDDLE, J.

The facts of the case appear by the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*Richard C. McMurtrie, Samuel Evans Maires* with him, for

appellant.—Defendant company was negligent: (*a*) In omit·
ting to give notice of the approaching train by its flagman, and
lowering the gates: R. R. v. Killips, 88 Pa. 405; R. R. v.
Frantz, 127 Pa. 297; Stapley v. Ry., L. R. 1 Exch. Cases, 21;
Wanless v. Ry., L. R. 6 Q. B. 481.   (*b*) In placing an ob-
struction upon its track at a public crossing, and permitting it
to remain there: Penna. R. R. v. Ackerman, 74 Pa. 265;
(*c*) In failing to blow a whistle, ring a bell, or give any warn-
ing of the approaching train: Childs v. R. R., 150 Pa. 73.

The question of contributory negligence was for the jury:
Neiman v. D. & H. Canal Co., 149 Pa. 92; R. R. v. Frantz,
127 Pa. 297; Ellis v. R. R., 138 Pa. 506; Whitman v. R. R.,
156 Pa. 175; Gardner v. R. R., 150 U. S. 349.

*Gavin W. Hart,* for appellee, cited: Mooney v. R. R., 126
Pa. 244; Marland v. R. R., 123 Pa. 487; Irey v. R. R., 132
Pa. 563; Kraus v. R. R., 139 Pa. 272; Hauser v. R. R., 147 Pa.
440; Myers v. R. R., 150 Pa. 386; Newhard v. R. R., 153 Pa.
417; Lees v. R. R., 154 Pa. 46; Carroll v. R. R., 12 W. N. 348.

OPINION BY MR. JUSTICE DEAN, April 2, 1894:

The defendant's railroad, with a general direction east and
west, crosses diagonally at grade Tenth and Eleventh streets
in the city of Philadelphia with four tracks, the two outer
tracks being sidings and the two inner ones for east and west
bound trains.   At the Tenth street crossing there are two
plank sidewalks over the railroad, one on the east, and the
other on the west side of the street, for foot travelers, leaving
the space between for vehicles.

For a long time, the railroad company had maintained safety
gates on each side of the crossing, and had also employed a
watchman, to guard against accidents.   Between twelve and
one o'clock in the daytime of the 17th of December, 1890,
Robert Matthews, his brother Daniel, and Augustus Musick,
all three of whom were in the service of the Penn Globe Gaso-
line Company, on Eleventh street, quit work and started to-
gether for their homes.   They walked down Eleventh until
they struck the railroad, then on the roadbed in the space be-
tween the east siding and the outbound track until they
reached the first plank walk on the west side of the Tenth

street crossing; then they stopped for a couple of seconds, while on the roadbed of the railroad company, to listen for trains; heard none and separated; Daniel Matthews and Musick turned off the track down Tenth street; Robert, whose home was on Diamond street on the other side of the railroad, continued walking on the railroad to the plank walk on the east side of the street; a train was standing on that side of the street, and he turned to walk on the plank footway across the tracks in the direction of his home; as he stepped off the track where the train was standing, to the next track, he was struck by a locomotive coming towards him on that track, and killed. When he met his death, he was on the plank walk of the street crossing; the safety gates were not closed; the watchman was in his box, but gave no warning of the approaching locomotive; it was a dark, rainy day; the steam from the standing locomotive settled near the ground, obstructing the sight, and the noise from blowing off steam made it difficult to hear coming trains when on the crossing. No whistle was blown, or bell rung. This plaintiff, the widow of deceased, brought suit for damages, averring her husband's death was caused by defendant's negligence.

We think we have stated the facts disclosed by plaintiff's evidence, in the view most favorable to her, as it is our duty to do where, as in this case, a compulsory nonsuit was entered on plaintiff's own evidence.

From the refusal of the learned judge who tried the cause to take off the nonsuit, this appeal is taken. Were the facts for the consideration of the jury? For that is the only question raised on this appeal.

The deceased stopped, looked and listened for a train while on the plank walk on the west side of Tenth street; he then crossed the intervening street to the walk on the east side, and then, in a couple of steps from where he turned in front of the standing train, was struck by the moving train and killed. It is alleged no warning was given him, while on the crossing, of the coming locomotive; the gates were not lowered, the watchman waved no flag of danger. But was defendant, in any reasonable sense of the word, a traveler on the street crossing? From the time he set foot on the railroad at Eleventh street until he reached Tenth street, he was a foot traveler on the

railroad—was a trespasser; if his only purpose had been to cross the railroad, even as a trespasser, he could have done that in safety at any point between Eleventh and Tenth streets. But his object was, although entirely innocent in itself, to keep company with his companions to a point where they must take opposite directions to their homes at Tenth street crossing; when that is reached, they stop right on the tracks, where they say an approaching locomotive could neither be seen nor heard, and look and listen; then with all these circumstances of danger surrounding him, he continues on the track to the other side until confronted by the blinding steam and deafening noise of the standing locomotive, then deliberately turns to his right, where he can neither see nor hear, to cross three other tracks, and is immediately struck down. Certainly, the conduct of the deceased was manifestly negligent. It may be assumed that this would have been a question for the jury under wholly different circumstances. If the deceased had been approaching this crossing from either direction on Tenth street, as one of the public, he would have been in the exercise of an unquestioned right; he would then have been justified in expecting that degree of care which, under the circumstances, it was the duty of defendant to observe so as to guard against accidents. If the gates were up inviting him to cross, and no warning was given by the watchman, notwithstanding the difficulties of seeing and hearing, it would have been for the jury to determine whether he exercised care according to the circumstances. But if a trespasser reached the middle of that crossing from the ties either up or down the railroad, he is in no sense of the word a traveler from the street approaching danger, and about to exercise a right common to the public, that of crossing the railroad. The watchman will not be on the lookout to warn him, nor will the gates be lowered to stop him. These safeguards are to keep people from going on the crossing on the approach of trains, not to warn them to get off. The deceased was bound to know the purpose of the gates and the watchman, and that they were not there to guard against danger to those using the crossing from the direction of outgoing and incoming trains. The evidence clearly shows he thoughtlessly put himself in a place of danger, then when unable to either hear or distinguish the imminence of it, when, too, he might have stepped off in

safety as did his companions, he recklessly attempted to cross three other tracks.

The cases cited by the learned counsel for appellant are not in point when applied to the facts here. In Railroad Company v. Killips, 88 Pa. 405, Chief Justice STERRETT, in delivering the opinion of the court, says : " The ground of complaint is, that the keeper was withdrawn at 7 o'clock, and the gate left in such position as to mislead the traveling public,—invite them to cross and lure them into danger,—and that the deceased was thus misled and injured." In Railroad Company v. Frantz, 127 Pa. 297, Justice MITCHELL says : " But while the fact that the gates were raised, is no excuse for the failure of the plaintiff to stop, look and listen, yet on the other hand it is some evidence of negligence on the part of defendant. Its tendency is certainly to give the approaching traveler the impression that the crossing is safe, and thereby to blunt the edge of his caution." In Stapley v. London Railway Co., 1 Exc. Cases, 21, CHANNEL, B., said : " The carriage gate being open, and no gate-keeper present, a foot passenger was invited by that state of things to pass across the line, and the conduct of the company was therefore, we think, evidence of negligence to go to the jury." These and many other cases hold, that open gates, which should be closed in case of danger, are an invitation to the traveler on the highway to cross, and while this fact does not relieve him from the duty of exercising care, it is a fact for the consideration of the jury, in determining whether he exercised care according to the circumstances.

But where, as here, the person injured was not a traveler on the public highway crossing the railroad, but reached the place of danger from the railroad, the rule laid down in these cases can have no application. Coming from the direction he did, he had no right to presume the company knew he was there for the purpose of crossing, and the duty of greater care and vigilance on his part was imperative.

The judgment is affirmed, and appeal dismissed at costs of appellant.