## Ambler *v.* Philadelphia & Reading Railway Company, Appellant.

*Negligence—Railroads—Stations—Passenger—Trespasser.*

Where a mere licensee or loiterer who uses the station of a railroad company as a waiting room for a street railway car, operated by a company with which the railroad company had no connection, is killed while proceeding along a defective platform of the station to the street car, a parent of such person is not entitled to recover damages for the death; and even if the deceased had been a passenger alighting from a train on the other side of the station, and had crossed the tracks at a highway crossing at the end of the station platform, and had used the waiting room until the arrival of the street car, no recovery could be had for her death.

Argued Nov. 17, 1908. Appeal, No. 225, Oct. T., 1907, by defendant, from judgment of C. P. Bucks Co., May T., 1906, No. 13, on verdict for plaintiff in case of Eliza C. Ambler v. Philadelphia & Reading Railway Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Trespass to recover damages for death of plaintiff's daughter. Before STOUT, P. J.

The facts appear by the opinion of the Superior Court. See also Powell v. Philadelphia & Reading Railway Company, 220 Pa. 638, which involved injuries to another person at the same time and place.

Verdict and judgment for plaintiff for $1,195. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*William C. Ryan*, with him *Henry D. Paxson*, for appellant.—There was no evidence that Mary A. Ambler had been a passenger on a train of the defendant company, on the night of the accident, when she appeared at the station.

It was clearly her purpose in coming to the station to wait for the trolley. She was, therefore, a mere licensee at the time of the accident: Gillis v. Penna. R. R. Co., 59 Pa. 129; Baltimore & Ohio R. R. Co. v. Schwindling, 101 Pa. 258.

*Henry A. James*, with him *Howard Cooper Johnson*, for appellee.—There was evidence that Mary A. Ambler had been a passenger on a train of the defendant company.

She was not a mere licensee, but a passenger, and thus entitled to all the rights and protections as such: Girton v. R. R. Co., 17 Pa. Superior Ct. 143; Penna. R. R. Co. v. Green, 140 U. S. 49 (11 Sup. Ct. Repr. 650); Longmore v. Ry. Co., 115 E. C. L. 183; Texas, etc., Ry. Co. v. Brown, 78 Texas, 397 (14 S. W. Repr. 1034); Louisville & Nashville R. R. Co. v. Keller, 47 S. W. Repr. 1072; Harris v. Stevens, 31 Vt. 79; Burnham v. Ry. Co., 91 Mich. 523 (52 N. W. Repr. 14); Keefe v. R. R. Co., 142 Mass. 251 (7 N. E. Repr. 874); Gillis v. Penna. R. R. Co., 59 Pa. 129; Baltimore & Ohio R. R. Co. v. Schwindling, 101 Pa. 258.

OPINION BY PORTER, J., April 12, 1909:

The plaintiff brought this action against the defendant company to recover damages for the death of her daughter, which resulted from injuries received while upon the premises of the defendant at Langhorne, a station upon the line of the company between Philadelphia and New York. The company, at the time of the accident, operated at this locality two tracks and maintained a small station house, inclosed at the sides but open in front, on the south side of the south track, for east-bound passengers, and a platform upon the same side of that track extending from the station house eastward to a public highway named Bellevue Avenue. The main station house was on the

north side of the track and the platform upon that side extended along the north side of the north track from Bellevue Avenue westward to a point some distance west of the station house. Passengers alighting from or departing by west-bound trains did so from the platform on the north side of the north track, while those arriving or departing by east-bound trains did so from the platform on the south side of the south track. Direct access from one platform or station house to that on the opposite side of the line was prevented by an iron picket fence between the tracks and passengers who desired to pass from one platform to the other could only do so by proceeding along the platform to Bellevue Avenue and there, upon said public highway, crossing the line of the railroad and arriving at the end of the platform upon the other side. The station house had recently been moved a short distance, the railroad company being about to construct two additional tracks, and the platform upon the north side had recently been torn out and a temporary substitute provided by filling in with cinders. During the progress of making these changes and constructing the new platform upon the north side temporary expedients for those using the station were provided, but the evidence tended to establish that the platform upon the north side west of the north side station house was composed of loose cinders and more or less obstructed and that it was not well lighted. The daughter of the plaintiff had appeared at the north side station house of the defendant on the evening of the accident, about or very shortly after seven o'clock, and had remained there about twenty minutes when a trolley car of a street railway company which had no connection with this defendant appeared in sight and she with several other persons left the station house to take the car. They passed from the station house to the north platform and passed along it to the westward, while so passing along this cinder platform Miss Ambler was struck by a west-bound express train and received injuries which shortly afterwards caused her death. The contention of the appellee, in the court below, was that the platform was maintained in such a condition that persons passing from the north side station house westward upon the same were forced to walk close to the

track and that it was so insufficiently lighted that they could not see where the track was and that in maintaining the platform in this condition the defendant company was guilty of negligence. The defendant company asked for binding instructions in its favor, under the evidence, in the court below and, such instructions having been refused, subsequently moved the court for judgment in favor of the defendant non obstante veredicto, which motion the court overruled and ordered judgment to be entered upon the verdict. The refusal of binding instructions is the subject of the first specification of error, and the second specification of error is founded on the refusal of the court below to enter judgment in favor of the defendant non obstante veredicto. The only question is, therefore, should the case, under the evidence, have been submitted to the jury.

The burden was upon the plaintiff to prove the facts upon which she would become entitled to recover, or to prove facts and circumstances from which a jury might be permitted to infer the existence of the facts upon which that right depended. If Miss Ambler was a mere licensee or loiterer, using the station house of the defendant company as a waiting room for a street railway car, operated by a company with which this defendant had no connection, then the plaintiff was not entitled to recover. The plaintiff was only entitled to recover in case her daughter was a passenger of this defendant company and stood in that relation at the time the injury was sustained.

The plaintiff in her statement averred that her daughter "was lawfully upon the platform of said station," but did not aver that she was or had been a passenger. We have carefully considered the evidence and are not satisfied that it contains anything from which the jury ought to have been permitted to infer that Miss Ambler had been a passenger upon any train of the defendant company. It is true that a number of witnesses spoke of Miss Ambler's arriving "on the next train" or "by a later train," but reading the entire evidence of each of such witnesses clearly establishes that not one of them saw Miss Ambler that evening until she appeared at the west-bound station house on the north side of the railroad, or upon the north-side platform, immediately in front of that station house.

Yet all of those witnesses assumed that Miss Ambler had arrived by an east-bound train, had alighted at the platform on the south side of the railroad, proceeded along that platform to Bellevue Avenue, crossed the railroad upon the public highway and then walked along the railroad platform upon the north side and so reached the north-side station house. No witness had seen Miss Ambler upon the south platform, no one had seen her upon any train, or taking any train or leaving any train. The testimony of no witness better illustrates this than that of Caroline H. Engle, upon which the appellee so confidently relies. This witness testified, no doubt honestly, as to the time the train by which Miss Ambler arrived left the Reading Terminal, in Philadelphia, and the time of its arrival at Langhorne Station. But it is an undisputed fact that if Miss Ambler arrived by that train she must have alighted on the south platform, yet the witness explicitly states that she first saw Miss Ambler that evening coming along the cinder platform to the door of the station on the north side of the track, that is the west-bound station. These witnesses all evidently assumed that Miss Ambler had come by a train because of the time at which she arrived, yet the end of the platform on the north side at Bellevue Avenue was accessible to all persons who chose to enter, whether they came upon foot, alighted from a carriage or street car. Another witness, Edward Palmer, testified, at first, that Miss Ambler had arrived on an east-bound train, but in replying to the very next question he qualified this by saying, "Understand, I did not see her alight from the train." This witness explained why he thought the deceased had arrived on an east-bound train by saying "I heard her say she came from the city." It should here be observed that this witness did not pretend to testify that she had said what city she came from or in what manner she had traveled. Had the appellee even offered to prove that the deceased had declared, in the absence of any representative of the appellant, that she had that evening arrived on an east-bound train, the admissibility of such evidence for the purpose of charging the defendant with liability, would certainly be doubtful.

Let it be assumed, however, that there was sufficient evidence

to warrant a finding that Miss Ambler had that evening arrived at Langhorne Station as a passenger on an east-bound train of the defendant company; then the only inference as to what followed which a jury should be permitted to draw from the evidence is properly and accurately narrated by the court below in the opinion overruling the motion of the defendant for judgment non obstante veredicto. The learned judge of the court below in his opinion thus impartially states what the deceased did, after alighting from the train, "She was well acquainted with the locality of the station and the uses of the waiting room, but she had not been at home for a period of about three months, during which the changes there in progress had been made. She had come home to visit her mother. She could not reach home without crossing the tracks. She could not cross where she got off the train to the waiting rooms on the north side because of an iron picket fence between the east and west bound tracks, extending from a point west of the station to the line of Bellevue Avenue, a public street crossing. She walked on the cinder walk to Bellevue Avenue and there crossed the railroad over the public street crossing to the north side of the railroad, at the end of the cinder walk that led to the station and waiting rooms about one hundred and ninety feet to the west of Bellevue Avenue. At this point she was as near to the trolley line as she was at the station. She could have proceeded directly home on the public highway, or could have gone across the street to a public licensed hotel to wait for the car. She, however, did not do so. She took the newly laid cinder walk or platform and went to the railroad station. She entered the waiting room and remained there about twenty minutes until the arrival of the next street car to Langhorne. During this time the waiting rooms were open for the use of passengers. Her only purpose, so far as disclosed by the testimony, was to wait for the next street car to take her home, and to secure shelter from the rain and storm in the meantime. On the arrival of the street car she left the waiting room in company with five or six others who were waiting there for the same purpose." While on the way from the station to the street car Miss Ambler was injured. Upon this state of facts

did Miss Ambler continue to be a passenger of the defendant company after having arrived at Bellevue Avenue, a public street, and having selected the station house of the defendant company from among such places as were available for her use as a waiting place for the street car, when she left the public street and walked along the cinder platform of the defendant company one hundred and ninety feet westward and entered the station house, for the sole purpose of waiting for a street car?

The answer to this question is to be found in the opinion of Mr. Justice ELKIN, who spoke for the Supreme Court, in Powell v. Philadelphia & Reading Railway Company, 220 Pa. 638. The fact which distinguishes that case from this one is, that in the Powell case there was evidence that the plaintiff had left the station on the south side of the track and gone to that on the north side of the track to meet her friend or await his arrival in order to accompany her to her place of destination. There was in the present case no such evidence, and the following extract from the opinion has, therefore, direct application. "In this connection we quite agree with the suggestion made by the learned counsel for appellant that it was no part of the duty of the railroad company to furnish a waiting room for the intending passengers of a street railway company with which the railroad company had no connection, and if it clearly appeared that the only purpose of the plaintiff after alighting from the train at the south side of the tracks was to go to the station on the north side, for the purpose of awaiting the arrival of a street railway car on which she intended to become a passenger, there could be no recovery because the relation of carrier and passenger would, under these circumstances, have ceased to exist before the injury occurred." Applying this statement of the law to the facts on the present case, we must hold that Miss Ambler, at the time of the accident, had ceased to be a passenger and had become a mere licensee. This being the relation in which the deceased stood to the defendant company, the latter owed her no positive duty the mere neglect of which would render it liable for damages: Gillis v. Pennsylvania Railroad Company, 59 Pa. 129; Bal-

timore & Ohio Railroad Company v. Schwindling, 101 Pa. 258.

The judgment is reversed and judgment is now entered in favor of the defendant non obstante veredicto.

HENDERSON, J., dissents.