**TOMPKINS v. ERIE R. CO.**[*]
No. 367.

Circuit Court of Appeals, Second Circuit.
July 12, 1938.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (William C. Cannon, Theodore Kiendl, Harold W. Bissell, and L. Ray Glass, all of New York City, of counsel), for appellant.

Bernard G. Nemeroff and Bernard Kaufman, both of New York City (William

[*]Writ of certiorari denied 59 S.Ct. 108. 83 L.Ed. ——

Walsh and Aaron L. Danzig, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The plaintiff sustained injuries when hit by some object projecting from an approaching freight train as he was walking along a path parallel and adjacent to the track upon the defendant's right of way in Hughestown, Pa. In the district court he obtained a substantial judgment which was affirmed by this court in Tompkins v. Erie R. Co., 2 Cir., 90 F.2d 603. On that appeal the defendant asserted, and the plaintiff denied, that by the common law of Pennsylvania the railroad company's only duty to the plaintiff was to refrain from wilful or wanton injury to him; but this court ruled that the question of liability was one of general law, and we declined to decide the issue of state law. Upon a writ of certiorari the Supreme Court held that this was error. It reversed our judgment and remanded the case for further proceedings in conformity with its opinion. Erie R. Co. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487, decided April 25, 1938. We are to determine the disputed issue of Pennsylvania law.

The defendant contends that Tompkins, while walking on a longitudinal, beaten path upon its right of way, was a trespasser to whom it owed no duty of care, since his presence there was not discovered until after the accident. The case of Falchetti v. Pennsylvania R. Co., 307 Pa. 203, 160 A. 859, decided in 1932, is relied upon as establishing this doctrine. That was an action to recover damages for the death of the plaintiff's minor son, who was struck by the overhang of the cylinder head of a passing engine, while he was walking longitudinally on the defendant's right of way, immediately adjacent to its tracks. The boy was only six years old—too young to be chargeable with contributory negligence. He was walking along an alleged permissive way which had been in constant use for a long time, resulting in an easily recognized path, of which the defendant, it was argued, was bound to take notice and, therefore, to operate its trains so as not to cause injury to persons using it. But the court held that the boy was a trespasser, whose presence was not to be anticipated despite the beaten path.

It reversed a judgment for the plaintiff and entered judgment for the defendant non obstante veredicto. In the course of its opinion, the court said (page 860):

"* * * moreover, as the Conn [Conn v. Pennsylvania R. Co., 288 Pa. 494, 136 A. 779] and Kolich [Kolich v. Monongahela Ry. Co., 303 Pa. 463, 154 A. 705] Cases show, an alleged permissive way parallel with plaintiff's [sic] tracks and on its right of way, as distinguished from a permissive crossing over them, is not recognized in this State. * * *

"We do not deem it necessary to review the authorities cited by either litigant as showing, or tending to show, that a long-continued use of a well-defined path on the right of way of a railroad company may or may not be considered as evidencing a permission to continue to use it. So far, if at all, as they tend to sustain the right to continue such a use, they must be considered as overruled by the Conn and Kolich Cases."

Whether there were prior Pennsylvania cases inconsistent with the Falchetti decision and whether the Conn and Kolich Cases directly support the rule it lays down are questions that do not concern us. It is clear beyond question that Falchetti's Case declares unequivocally that the law of Pennsylvania does not recognize a "permissive way" parallel and adjacent to a railway company's tracks but treats a person walking along such a path as a trespasser. It remains for us only to determine whether the Supreme Court of the State has subsequently modified that rule.

The plaintiff urges that Di Marco v. Pennsylvania R. Co., 1936, 321 Pa. 568, 183 A. 780, has in effect, though without mentioning Falchetti's Case, overruled it. In the Di Marco Case the railroad track was at the bottom of a cut about 30 feet deep. Along the top of the eastern side of the cut ran a narrow foot path, close to its edge and following its contour. This path was upon the railroad's right of way, beyond which was a vacant field where men and boys were accustomed to play ball. The plaintiff was a young boy who was returning from the ball field and throwing a ball to and fro with other boys. When the ball became lost, the plaintiff walked over to the cut to see whether the ball had fallen into it. As he stood on the path, the ground beneath his feet caved in and he was precipitated onto the track and injured by a

passing train. The lower court entered judgment for the defendant notwithstanding the verdict and, on appeal, this was affirmed. The decision goes on the ground that the defendant was guilty of no negligence, since it owed no duty to support the path against a cave-in caused by rain, or to give warning of the danger; but in the course of its opinion the court said that "The proof of the permissive way is clear, however, and the requirement of ordinary care toward the users thereof may be conceded." (Page 781.) It also referred to the boy as "a gratuitous licensee", and cited numerous railroad cases involving permissive ways. The opinion assumed that a duty of care existed in favor of users of the path, but showed that it did not extend to shoring up the bank or giving warning of an obvious danger which the defendant had not created. It is one thing to assume a principle of law arguendo and then demonstrate that it does not apply to the facts at bar; it is quite another thing to lay down a principle in the very teeth of a recent decision. Not a word was said of Falchetti's Case. That case did not repudiate the whole doctrine of permissive ways; it only confined them to crossings. We should not be justified in saying that the rule which it so explicitly laid down was implicitly overruled by reasoning in the Di Marco opinion which assumed a duty to users of the path merely to show its inapplicability. Therefore, we regard the Falchetti Case as still representing the law of Pennsylvania. That view is supported by Noonan v. Pennsylvania R. Co., 1937, 128 Pa.Super. 497, 194 A. 212, although it is not a decision of the court of last resort. There it was held that a child sitting on one of the cross ties of the defendant's track was a trespasser to whom no duty was owed except to refrain from wanton or wilful acts. In its discussion the court cites both the Falchetti and the Di Marco Cases; the former for the proposition that a permissive way parallel with the tracks and on the railway's right of way is not recognized, and the latter for the principle that the defendant was under no duty to warn of a danger that was obvious.

The plaintiff further contends that in any event the rule of the Falchetti Case is inapplicable because he was struck at the intersection of the longitudinal path with a cross-path that extends across the tracks from the dead end of Hughes Street, and, therefore, he was at a place where a duty of care was owed him. Although the pleadings were framed on the theory that the plaintiff was injured while using the longitudinal path, he testified that he had just set foot upon the cross-path when the projecting object struck him. Whether or not he had reached the junction of the two paths at the moment of impact we regard as irrelevant under the law of Pennsylvania. He was not upon the cross-path for the purpose of crossing the tracks; he intended to turn to his left and veer away from them. There are several Pennsylvania cases which involve the duty owed to persons who stand or loiter upon station platforms for purposes unconnected with business of the railroad. These cases hold that the railroad company is liable to such persons only for wanton or intentional injury. Gillis v. Pennsylvania R. Co., 59 Pa. 129, 98 Am.Dec. 317; Baltimore & Ohio R. Co. v. Schwindling, 101 Pa. 258, 47 Am.Rep. 706; Ambler v. Philadelphia & Reading Ry. Co., 39 Pa.Super. 198; see Powell v. Philadelphia & Reading Ry. Co., 220 Pa. 638, 70 A. 268, 20 L.R.A.,N.S., 1019. They present situations analogous to that of the case at bar. They show that the mere fact that a person is at a place where the railway company would owe him a duty of care if he were engaged upon a certain errand, does not establish such a duty if his presence is for a different purpose. The case of Matthews v. Philadelphia & Reading Ry. Co., 161 Pa. 28, 28 A. 936, is also pertinent. There the plaintiff's decedent walked along the railroad tracks until he came to a public street crossing where, turning to the right to cross the tracks, he stepped in front of a moving engine. The plaintiff was non-suited on the ground that decedent was guilty of contributory negligence as a matter of law. The point of present interest is that the opinion differentiates between a pedestrian who approaches a crossing along the street and one who approaches as a trespasser along the railroad's right of way. Had the deceased approached from Tenth Street, "he would then have been justified in expecting that degree of care which, under the circumstances, it was the duty of defendant to observe so as to guard against accidents" (page 937), and the question of his contributory negligence would have been for the jury; but since he approached from the tracks the issue of his negligence was too clear to be submitted to the jury. The court says, at page 31, 28 A. at page 937:

"* * * But if a trespasser reached the middle of that crossing from the ties, either up or down the railroad, he is in no sense of the word a 'traveler' from the street, approaching danger, and about to exercise a right common to the public,— that of crossing the railroad. The watchman will not be on the lookout to warn him, nor will the gates be lowered to stop him. These safeguards are to keep people from going on the crossing on the approach of trains, not to warn them to get off. The deceased was bound to know the purpose of the gates and the watchman, and that they were not there to guard against danger to those using the crossing from the direction of outgoing and incoming trains. The evidence clearly shows he thoughtlessly put himself in a place of danger, then, when unable to either hear or distinguish the imminence of it,—when, too, he might have stepped off in safety, as did his companions, —he recklessly attempted to cross three other tracks."

In the light of the foregoing cases we think Tompkins must be considered as a pedestrian upon a longitudinal path, even though he had reached its junction with the cross-path when he was struck. The basis for differentiating between longitudinal and crossing paths lies in a balancing of the interests to be protected. People must be permitted to get across the right of way, and where they have been accustomed to cross at the same spot in considerable numbers for a sufficient period of time, a permissive way is established and the railway company must exercise due care to avoid injuring pedestrians who may there be expected. But a wayfarer who walks parallel and adjacent to the track has no such interest as would justify imposing upon the railroad a duty which might interfere with the operation of its trains along the whole length of its right of way, if trespassers could acquire such rights. Certainly the interest of a longitudinal wayfarer does not change when he reaches a cross-path. The railroad was indeed charged with a duty

of observing care at such spots, but not care with respect to him. He can no more stand on its duty to others than can one who is not within a class which a statute is enacted to protect. Am.Law Inst. Torts, sec. 286, p. 755. Under the Pennsylvania law, the defendant owed no duty to the plaintiff except to refrain from wanton or wilful injury. No such injury was either pleaded or proved. Accordingly, the defendant's motion to dismiss at the close of the case should have been granted.

For this error the judgment must be reversed. The question then arises, not debated by the parties, whether this court has power to award judgment to the defendant. Since the complaint states no cause of action under Pennsylvania law, no new trial to a jury can be had without an amendment. Whether an amendment, if requested, should be allowed is a matter upon which this court is as well able to pass as could the district court, if the cause were remanded without directions. The plaintiff's own proofs established that no cause of action can truthfully be stated by an amendment; to grant one would be an abuse of discretion. Under such circumstances we do not think that the rule of Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas. 1914D, 1029, stands in the way of directing judgment for the defendant. That case preserves to a plaintiff the right to a jury trial when any issues of fact remain to be settled. In the case at bar there are no such issues. We hold merely that where the complaint sets forth no cause of action and no amendment to correct its deficiencies can properly be granted, this court may direct that judgment be entered for the defendant. Heffner v. Pennsylvania R. Co., 2 Cir., 81 F.2d 28, is not to the contrary, for there the complaint was good though the proof was insufficient.

The judgment is reversed and the cause remanded with directions to enter judgment for the defendant.