## ANTONAS v. LYFORD.
### No. 964.

District Court, M. D. Pennsylvania.

March 7, 1944.

Stanley F. Coar, of Scranton, Pa., and Louis A. Fine, of Honesdale, Pa., for plaintiff.

Paul Bedford and Benjamin R. Jones, Jr., both of Wilkes Barre, Pa., for defendant.

JOHNSON, District Judge.

This is a civil action by an administratrix to recover damages for the death of her minor. The case came on for trial before the court and a jury, and a verdict was rendered for the plaintiff. The defendant has moved for judgment non obstante veredicto.

The facts of the case are as follows: Mary Antonas, a minor 13 years of age, resided at Browndale, Wayne County, Pennsylvania. Near where she resided the defendant owns and operates a double track railroad intersected by Marion Street in Browndale. At a distance of about 300 feet from this intersection the double tracks of the railroad cross a trestle. The trestle is twenty-five to thirty feet long and is about twenty-five feet above the surface of a stream. The ground at each end of the trestle is filled and graded to the level of the trestle and the double track is laid over the fill and the trestle in a long sweeping curve. The fill between the double tracks is about four to five feet wide and level and flat throughout the curve. Where the two tracks cross the trestle the flat fill between the inside rails ceases abruptly and there is nothing but an open space from two to three feet wide between the ends of the ties of each track. The top or mouth of this opening is on the same level as the top

of the fill and no guard rail, curb or covering exists as a warning or a protection.

Northeast of the trestle and east of the creek or stream there is a large area of flat surface used generally by the people of the neighborhood for upwards of eighteen years as a playground. Both adults and children, when not able to cross the creek to get to the playground, use this trestle to reach a path running down the bank east of the trestle to the playground. For the same length of time the people in Browndale who have been employed in large numbers at a breaker east of the trestle used it daily going to and from work.

Both children and adults of the neighborhood crossed the trestle for the purpose of gathering leaves in the fall to use as bedding for livestock, to gather berries, to pick coal, and also for the purpose of taking cows to the flat lands beyond the trestle for pasturage.

The playground area is immediately adjacent to the tracks on the easterly end of the trestle. The path worn in the ties upon the trestle continues down an embankment at the easterly end of the trestle and enters upon the playground area. The playground has been used by the inhabitants of Browndale for many years. One witness testified to having played ball there twenty-three years prior to the date of the trial. It has recently been improved by the National Youth Administration. The only access to the playground is by means of the trestle which thereby became to all intents and purposes a part of the playground area.

That this use was common and of long standing and known to the defendant company was fully supported by the evidence. That part of the ties south of the southerly rail of the westbound track had been so long and frequently used that it showed a definite grooving or wear of the surface of the ties caused by wheelbarrows, bicycles, wagons and small conveyances.

On the day of the accident Mary Antonas and two girl companions walked from Marion Street about 300 feet along the railroad tracks intending to cross the trestle in search of cows. Mary walked behind her companions and was last seen about twenty feet from the trestle. Her two companions crossed the trestle and as they were about to leave it they heard a loud noise and found that Mary had fallen through the opening in the trestle and had landed on the sharp, jagged rocks in the creek bed, approximately twenty feet below. She was suffering from a fractured skull and other injuries, from which she died the following day.

It is the contention of counsel for the defendant company that inasmuch as deceased was proceeding longitudinally along the railroad right of way that there can be no recovery. It is also contended on behalf of the defendant that by walking upon the trestle the deceased undertook a risk, the existence of which was obvious; that the plaintiff should be excluded from recovery in this action on any playground theory and finally that the evidence failed to reveal how and why the deceased fell from the trestle.

It is the contention of the plaintiff that defendant had full knowledge of the use of its property as a playground; that it had full knowledge for many years of the use of the trestle as a means of crossing the railroad tracks and of ingress and egress to and from the playground, and for other purposes; that the opening between the tracks on the trestle constituted a dangerous condition maintained by the defendant which it should reasonably have known would cause injury to a person using the trestle, and further, that there is no Pennsylvania rule against longitudinal permissive ways applicable to the facts in this case.

Defendant's motion for a directed verdict having been denied, and the case submitted to the jury, and a verdict rendered for the defendant and judgment entered thereon, the matter is now before this court on defendant's motion for judgment non obstante veredicto.

The reasons advanced by the defendant in support of its motion for judgment will now be considered.

Defendant contends that Pennsylvania law does not recognize a permissive way parallel to and adjacent to a railway company's tracks, relying chiefly on the following cases: Conn et al. v. Pennsylvania R. Co., 1927, 288 Pa. 494, 136 A. 779, and Kolich v. Monongahela Ry. Co., 1931, 303 Pa. 463, 154 A. 705.

In the Conn case recovery was sought by a mother and her minor son for injuries sustained by the son when struck by a train while he was walking along the right-of-way as it ran beneath a bridge. The Pennsylvania Supreme Court in reversing the trial court held that the evi-

494

dence was not sufficient to come within the playground rule nor to establish a permissive way and that the child was a trespasser. In concluding the opinion Mr. Justice Frazer states [288 Pa. 494, 136 A. 784] "* * * the evidence falls far short of showing the existence of a defined permissive way or crossing over defendant's property at the place of the accident, so no recovery can be had * * *." The ruling was not made upon the basis of a user parallel and adjacent to the railway company's right-of-way.

The case of Gray et al. v. Pennsylvania R. Co., 293 Pa. 28, 141 A. 621, decided in 1928, one year after the decision in the Conn case, recognizes that a permissive longitudinal way may exist.

In the Kolich case the plaintiff travelled longitudinally on defendant's right-of-way for over a mile on a dark and foggy night until he arrived at a grade crossing. After plaintiff reached the crossing he used it to pass over defendant's railroad track. After taking three steps and when plaintiff came " 'right in the middle of the track * * *' " he was struck by a shifting train moving at right angles to his line of travel on the crossing. The jury found the grade crossing to be a permissive way and the Supreme Court declared that there was ample evidence to support that finding and also to support a finding that the defendant was guilty of negligence in giving no warning of the approach of its train. The trial court was reversed and judgment entered non obstante veredicto on the ground that the plaintiff was guilty of contributory negligence in that "* * * he could and would have both seen and heard the train, before he stepped on the track where he was struck, had he given such attention as the law required of him." The ruling in this case also was not made upon the basis of a user parallel and adjacent to the railway company's right-of-way.

The case of Falchetti et ux. v. Pennsylvania R. Co., 1932, 307 Pa. 203, 160 A. 859, 860, strongly relied upon by counsel for the defense, was brought to recover damages for the death of a minor who was struck by the overhang of a cylinder head on one of defendant's passing engines while he was walking longitudinally on its right-of-way adjacent to the tracks. The trial judge's refusal of defendant's point for binding instructions and the dismissal by the court in banc of defendant's motion for judgment non obstante veredicto were held to be erroneous and reversed. The minor plaintiff, a boy of six years, was held to be a trespasser on the right-of-way and the defendant not liable to the plaintiffs in such capacity. The Court stated:

"The explanation of the establishment and use of the alleged permissive way was that the character of the public road, near to and paralleling the tracks, and the constant passage of automobiles thereon, made the road dirty and disagreeable in bad weather, and at all times dangerous to pedestrians, particularly to children; and because of this the space alongside of defendant's tracks had been in constant use for a long time, resulting in an easily recognized beaten path, of which defendant was bound to take notice, and, therefore, to operate its trains so as not to cause injury to those using it. But defendant was not responsible for the character and condition of the public road, and, moreover, as the Conn and Kolich cases show, an alleged permissive way parallel with plaintiff's tracks and on its right of way, as distinguished from a permissive crossing over them, is not recognized in this State.

"The need for this conclusion is made apparent in the instant case, for this alleged beaten path is at some points dangerously near to defendant's tracks, and at others at a relatively safe distance therefrom; and it parallels those tracks around the outside of a rather sharp curve, so that it is difficult, if not impossible, for the engineer of an approaching train on the track nearest to the path to know, until it is too late to avoid an accident, whether or not he can operate his engine without striking a pedestrian, if one should be on the path at the place of this regrettable accident. At that point it was but a few inches from the track, so that the cylinder of the engine, on account of the curve, not only projected over the rail further than would have been the case on a straight track, but also, by reason thereof, tended to hide from the view of the engineer those who were on the path.

"We do not deem it necessary to review the authorities cited by either litigant as showing, or tending to show, that a long-continued use of a well-defined path on the right of way of a railroad company, may or may not be considered as evidencing a permission to continue to use it. So far, if at all, as they tend to sustain the right to continue such a use, they

must be considered as overruled by the Conn and Kolich cases."

Because the Conn and Kolich cases do not uphold the principle of law for which they were cited as authority it is necessary to examine the law of Pennsylvania to determine if any basis exists for a rule prohibiting a permissive way or crossing parallel and adjacent to a railway right of way, as applied to the way or crossing in this case.

One of the earliest cases reported in Pennsylvania relative to permissive ways, and one frequently cited, is that of Kay v. Pennsylvania Railroad Co., 1870, 65 Pa. 269, 3 Am.Rep. 628. That case involved the lease of a railroad yard by the defendant from another railroad company. The yard was used for the purpose of piling and loading lumber and due to the nature of the business conducted thereon the yard was left open and the public permitted to pass to and fro and along the tracks. Along the track where the accident occurred a well worn foot path was visible. The injury was caused by detaching a lumber car and sending it unattended around a curve on a down grade to a point not visible to the railroad employees who dispatched it.

The question involved whether the injured child was a trespasser or a licensee was determined in favor of the plaintiff, the court holding that the child was, under the circumstances, a licensee, Mr. Justice Agnew in writing the opinion stated, page 273 of 65 Pa., 3 Am.Rep. 628, "Conceding the right of the railroad company to the exclusive use of its tracks over the lot * * * the true question is whether the circumstances created a different duty. The ownership of the lot gave to the company the right to use it as most convenient and expedient in moving its cars; and no one can gainsay the right to detach and send cars ahead without a brakeman, even out of sight and around a curve. But the case is altered when, by a license to others, they have devoted this ownership to a use involving their interests and their safety; and by sufferance permitted the public to enjoy a privilege of passage which might bring their persons into danger. Duties grow out of circumstances, the authorities tell us, and that which in one case would be an ordinary and proper use of one's rights may, by a change of circumstances, become negligence and a want of due care. * * * Toleration is therefore not to be overlooked in testing a man's right to the use of his property."

The Kay case was followed in 1886 by the case of Taylor v. Delaware & Hudson Canal Company, 113 Pa. 162, 8 A. 43, 57 Am.Rep. 446, where the use of a pathway along and diagonally across the tracks was recognized. The case of Bailey v. Lehigh Valley R. Co., 1908, 220 Pa. 516, 519, 69 A. 998, 999, held that "In the absence of evidence showing permission to use its tracks, the necessity for the exclusive use by the company in the operation of its trains excludes any presumption of the company's consent to its use for any other purpose." This is far from holding that no parallel and adjacent user is to be permitted. In Boggess v. Baltimore & Ohio Railroad Company, 1912, 234 Pa. 379, 83 A. 356, and Caudell v. Baltimore & Ohio Railroad Company, 1912, 234 Pa. 392, 83 A. 361, permissive use of a diagonal way across the tracks was recognized. The case of Counizzari v. Philadelphia & Reading Railway Co., 1915, 248 Pa. 474, 94 A. 134, recognizes the status of one using an established pathway adjacent to and parallel with the right-of-way as a licensee.

The principle set forth in the Kay case was cited with approval by Mr. Justice Maxey in Thompson et al. v. Reading Company, 1942, 343 Pa. 585, 588, 23 A.2d 729, 731, where he said, "Toleration of trespass for sufficient time gives rise to privilege which adds to the duties of the occupier in the maintenance and use of his premises. Kay v. Pennsylvania R. Co., 65 Pa. 269, 273, 3 Am.Rep. 628." This principle has been well established in the law of Pennsylvania and was not overruled by the Conn and Kolich cases.

It thus becomes apparent that the Falchetti case was based upon a misapprehension of the law of Pennsylvania, and that if the court had reviewed the authorities instead of stating that it did not "deem it necessary" to do so, the unfortunate decision would not have been made.

The error made in citing the Conn and Kolich cases as stating a principle which those cases do not uphold has had far-reaching consequences. The so-called rule against a longitudinal permissive way in Pennsylvania was adopted, by reason of the decision in the Falchetti case, by the United States Supreme Court in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. There the plaintiff was struck by an open

door of a moving car while he was walking along defendant's right-of-way. Defendant maintained, citing the Falchetti case, that the only duty owed plaintiff was to refrain from willfully or wantonly injuring him. The plaintiff insisted that the Pennsylvania decision did not establish the rule for which the defendant contended. A footnote on page 80 of 304 U.S., on page 823 of 58 S.Ct. states, "Tompkins also contended that the alleged rule of the Falchetti Case is not in any event applicable here because he was struck at the intersection of the longitudinal pathway and a transverse crossing. The court below found it unnecessary to consider this contention, and we leave the question open."

The Tompkins case was again before the Circuit Court of Appeals, Second Circuit, 98 F.2d 49, on remand, where the rule was again upheld. It is interesting to note that the Circuit Court declared that the Falchetti case unequivocally stated that the law of Pennsylvania does not recognize a longitudinal permissive way. That opinion states, page 50 of 98 F.2d, "Whether there were prior Pennsylvania cases inconsistent with the Falchetti decision and whether the Conn and Kolich cases directly support the rule it lays down are questions that do not concern us. It is clear beyond question that Falchetti's case declares unequivocally that the law of Pennsylvania does not recognize a 'permissive way' parallel and adjacent to a railway company's tracks but treats a person walking along such a path as a trespasser. It remains for us only to determine whether the Supreme Court of the State has subsequently modified that rule."

Again experience reveals the fallacy in the case of Erie Railroad Co. v. Tompkins. As this court has previously stated, "Decisions are not the law, they are only evidence of the law". It should not be held that a decision which is erroneous creates the law. No decision should be so binding upon other courts that it must be blindly followed so that justice cannot be done. In the performance of its duty a court should not be compelled to declare as law, that which it understands is not the law.

In addition to the peculiar status of the law pertaining to longitudinal permissive ways it must be borne in mind that the cases cited above are all concerned with moving trains, and, as is carefully ex-

plained in Tompkins v. Erie R. Co., 2 Cir., 98 F.2d 49, the (non-existent) rule is applied for the protection of railroad companies in the operation of trains.

If it is the intention of the appellate courts to write into the law a provision for the protection of railway operators so that it will not be necessary to maintain constant and unremitting watchfulness of every foot of right-of-way it will not be necessary to do so by the promulgation of a rule so strictly worded as to give rise to injustice. So long as the permissive use of the property of the railway company in confined to a' reasonably limited space it does not matter if the permissive way be at right angles to, diagonally across, or parallel and adjacent to the right-of-way. It is always to be remembered that the use established is permissive. That means that it is established with the permission of the owner and occupier and he must therefore have notice thereof. It is consequently not necessary to maintain constant and unremitting watchfulness of every foot of right-of-way. Having notice of the location of the permissive user the operator need but exercise care within the limitations of the user which he has permitted.

■ The plaintiff contends that there is no Pennsylvania rule against longitudinal permissive ways but if such so-called rule be upheld it does not apply to the present case. This court is in agreement therewith. The case now before this court does not involve the operation of trains along a right-of-way. It is consequently not concerned with the burden of constant watchfulness imposed upon the operators of railroad trains where a longitudinal way exists. Nor is this case solely based upon the question of adequate maintenance of way. From the evidence it is apparent that the trestle was used with the permission of the defendant, in conjunction with the playground area. As it was the sole means of ingress and egress thereto it became to all intents and purposes an essential part of the playground area. Therein the defendant maintained a dangerous condition which it should reasonably have known would cause injury to a person using the trestle and the crossing. The rule properly applicable to this situation is stated as follows:

■ "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure

or other artificial condition which he maintains upon the land, if

(a) The place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

(b) The condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

(c) The children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

(d) The utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein." Restatement of Torts, Sec. 339, Vol. 2, p. 920.

The above-quoted section was cited with approval in Pietros et ux. v. Hecla Coal & Coke Company, 118 Pa.Super. 453, 180 A. 119. The statement of law in Section 339 was cited by the Pennsylvania Supreme Court in Thompson v. Reading Company, 343 Pa. 585, 23 A.2d 729.

In Prokop et ux. v. Becker et al., 1942, 345 Pa. 607, 29 A.2d 23, 25, Mr. Justice Drew stated: "Toleration of trespass for a sufficient time, however, gives rise to a privilege which adds to the duties of the occupier in the maintenance of his premises, and the playground rule in Pennsylvania is a specialized application of this principle."

In Thompson et al. v. Reading Company, 343 Pa. 585, on page 591, 23 A.2d 729, on page 732, Mr. Justice Maxey stated, " 'The theory that in order to permit a child to recover for bodily harm it is necessary to find that he was enticed or allured onto the land, belongs to the 19th century philosophy of tort law, under which no duties were owing to trespassers qua the condition of the land, and the idea of enticement was created as the equivalent of an implied invitation to enter, which would thereby turn the child trespasser into a licensee. The true basis of the duty is the value of child life to the community. The danger arises out of the likelihood of child trespassing and the element of "enticement" or "allurement" is merely a subsidiary element, important only insofar as it bears upon the likelihood of trespassing. The modern cases recognize that some duties are owed to trespassers' ", and again on page 595, of 343 Pa., on page 734 of 23 A.2d, "In numerous cases in which children have been injured while playing on other people's property, the appellate courts of Pennsylvania have upheld the right to recovery. (citing cases) * * * This court, in affirming the judgment for plaintiff declared in an opinion by Chief Justice Agnew: 'It has been often said, duties arise out of circumstances. Hence, where the owner has reason to apprehend danger, owing to the peculiar situation of his property and its openness to accident, the rule will vary. The question then becomes one for the jury. * * * The common feeling of mankind * * * must say * * * that this spot is not so private and secluded as that a man may keep dangerous pits or deadfalls there without a breach of duty to society,' " and again on page 600 of 343 Pa., on page 736 of 23 A.2d, "This court said in Pope v. Reading Company, 304 Pa. 326, 333, 156 A. 106: 'At common law it was held that every man must have some knowledge "of the quality of the beast" (1 Hale P.C. 430) and use appropriate means to keep that beast from harming people. Public welfare requires that this same salutary rule apply to the inanimate objects in a man's possession and subject to his intelligent control.' In Bisson v. John B. Kelly, Inc., 314 Pa. 99, 110, 170 A. 139, 143, we said: 'It is a primary social duty of every person to take thought and have a care lest his action result in injuries to others. This social duty the law recognizes and enforces * * *. A normal human being is held to foresee those injuries which are the consequence of his acts of omission or commission which he, as a reasonable human being, should have foreseen.' "

The words of Mr. Justice Maxey are most pertinent to the instant case.

Correction of the condition maintained by the defendant railroad company upon its trestle would have been, by the erection of a guard rail or covering for the opening, a comparatively easy matter, compared to the risk to young children involved by its maintenance in the condition existing at the time of the accident.

The question of the deceased minor's ability to appreciate the risks involved in crossing the trestle was dependent upon the age and intelligence of the minor and the fact that the whole com-

munity was permitted by the defendant company to cross this trestle and the tracks, not only to use the playground but also for the many other purposes, and, therefore, was a question properly submitted to the jury.

■ The reason why and the method whereby Mary Antonas fell to her death to the rocky bed of the creek beneath the trestle must be decided from all the circumstances. She was last seen about to cross the trestle for the purpose of driving cattle home. She was found immediately beneath the opening in the trestle upon the rocky bed of the creek in such an injured condition that she died the following day. The evidence pertaining to these matters was properly submitted to the jury and its finding thereon will not now be disturbed.

Now therefore, this 7th day of March, 1944, defendant's motion to set aside the verdict and judgment is dismissed and the motion for judgment non obstante veredicto is refused and judgment is directed to be entered on the verdict.