Franc, Appellant, *v.* Pennsylvania Railroad.

Argued September 27, 1966. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*H. N. Rosenberg*, with him *Rosenberg and Kirshner*, for appellant.

*Michael R. Dougherty*, for appellee.

Opinion by Mr. Justice Musmanno, January 4, 1967:

On March 8, 1962, Rosemarie Franc was crossing, on foot, a railroad bridge over Chartiers Creek in Carnegie, when she fell through a hole in the floor of the bridge, due to a missing plank, and sustained serious injuries. She brought suit in trespass against the Pennsylvania Railroad, which owned and maintained the bridge, and recovered a verdict of $7,000 which, upon appeal to the Superior Court by the defendant railroad, was reversed and judgment was entered in favor of the defendant. We granted allocatur.

The Superior Court stated that it reversed because it felt compelled to do so on account of the decision in *Falchetti v. Pennsylvania Railroad Co.*, 307 Pa. 203. However, the facts in the *Falchetti* case are so dissimilar from the ones in the instant case that they can be said to run on a wholly different set of tracks. In *Falchetti* the minor plaintiff was struck by the cylinder head of a railroad engine while he was walking longitudinally on a path immediately adjacent to the railroad. In describing the locus in quo, the Supreme Court said the path "parallels those tracks around the outside of a rather sharp curve so that it is difficult, if not impossible, for the engineer of an approaching train on the track nearest to the path to know, until it is too late to avoid an accident, whether or not he can operate his engine without striking a pedestrian, if one should be on the path at the place of this regrettable accident." The Court explained further that the cylinder of the engine, on account of the curve, projected over the rail further than it would have been the case on a straight track and this "tended to hide from the view of the engineer those who were on the path."

*Falchetti*, therefore, can in no way be authority for the fact situation in the case at bar. This case has nothing to do with a railroad engine, a curve, or a collision. About the only point of similarity between *Falchetti* and the instant case is that the defendant hap-

pens to be the same railroad company. In the instant case the inhabitants in the immediate area of the bridge in controversy had been tramping across it for 30 years. The bridge accommodated one railroad track, with walkways on either side. Three weeks prior to the accident, the middle plank of one of the walkways disappeared. A couple of days before the accident, snow fell in such quantity and to such a depth that drift, overhang and nature's laws, aided by pedestrian movement, projected snow over the hole, obscuring the void beneath. The dirt and soot of railroad engines conspired with these other circumstances to give the entire walkway a uniform dirty appearance, further camouflaging the abyss into which Rosemarie Franc, 21 years of age, was to unwittingly plunge.

Since trains crossed the bridge several times a day, the railroad was charged with its daily maintenance and reasonable periodical inspection. Since railroad employees walked across the bridge, it was for the jury to determine whether the railroad company, if it did not have actual notice, had constructive notice of the hiatus in the walking surface of the span. The jury found, by its verdict, that the railroad company had notice of the defect in the floor of the bridge and found also that it was negligent in not repairing that defect.

The duty of the railroad company in situations such as the one here outlined is spelled out in the Restatement 2d, Torts, §335: "A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if (a) the condition (i) is one which the possessor has created or maintains and (ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and (iii) is of such a nature that he has reason to believe that such trespassers will not discover it and (b)

the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved." Comment c: ". . . If, however, the condition, though obvious to the adult trespasser, is such as not to disclose to him that there is a risk or its full extent, the possessor is under a duty to warn the trespasser of the risk and its extent." Comment f: ". . . On the other hand, he (the possessor) is not entitled to assume that the trespassers will discover conditions which are unusual to land of the character upon which the trespasser intrudes, or which are due to carelessness in the maintenance of those conditions which are necessary to the use of the land. . ."

As above stated, the railroad company knew or should have known of the defect in the floor of the bridge and it is clear that it failed to exercise reasonable care to warn users of the bridge of the condition and the risk involved in crossing the bridge. It displayed no signs on or near the structure, warning civilians away, nor did the railroad employees inform civilians to keep off the bridge. On the contrary, the railroad employees joined with the civilians in the march across the missing-plank bridge.

In *Francis v. B. & O. R.R. Co.,* 247 Pa. 425, the minor plaintiff was injured when, while walking longitudinally along railroad tracks, stepping on the ends of the ties, he was struck by the tender of a backing engine. The path followed by the boy was well defined and had been in frequent and continuous use by the public for two months. A verdict for the plaintiff was affirmed. In that case the defendant did not claim there could not be a longitudinal permissive path for pedestrians; it only argued that two months time was not a long enough period to establish such a permissive use. This Court said: "The law fixes the length of time required for the ripening of an adverse right; but duties are independent of time, and arise as circumstances call

them into existence. When the railroad company knew, or should have known, that part of the tracks through its yard was being used by the public in the way shown by the testimony, except as it interfered and prevented such use, a duty at once attached to exercise a degree of care in operating its cars thereon corresponding to the increased risk. Where a higher degree of care is demanded under some circumstances than others, and where both the duty and the extent of performance are to be ascertained as facts, a jury alone can determine what is negligent, and whether it has been proved. The degree of care required in this case was for the jury to determine from the facts as they found them to be."

In *Carr v. Fagan*, 278 Pa. 587, the plaintiff's husband was killed as the result of falling through a hole in the space occupied by the tracks of the defendant on a public highway bridge. The plaintiff maintained that the decedent had gotten off one car and was proceeding to board another when he walked into the hole at night. The trial court charged the jury that the defendant was to be held to the highest degree of care since the decedent was in effect still a passenger at the time of the accident. This Court ordered a new trial because there was doubt whether the decedent actually had gotten off a streetcar when he disappeared into the fatal aperture. Nevertheless we said: "whether a passenger or not, if he (the decedent) was injured because of the lack of ordinary care by defendant in safeguarding the hole in the bridge, then the question of its negligence was for the jury."

Of course, the *Francis* and the *Carr* cases preceded in time the *Falchetti* case, but the *Falchetti* decision did not overrule or even mention them. Moreover, to the extent that *Falchetti* in any way approximates the principles applicable in the case at bar, it is here declared not controlling. In addition, we specifically

overrule the proposition advanced in *Falchetti,* namely: "an alleged permissive way parallel with plaintiff's tracks and on its right-of-way, as distinguished from a permissive crossing over them, is not recognized in this State."

It is slightly grotesque to say that a railroad may accept responsibility for accidents which occur when pedestrians walk directly in front of railroad trains where they cannot help but be hit if they happen to be crossing just as the locomotive reaches the pedestrian spot, but cannot accept responsibility if, through its negligence, the railroad causes injury to a person who is walking parallel to the railroad track and will, therefore, never contest a train's right of way.

Judgment reversed and the verdict of the jury is ordered reinstated.

Mr. Justice COHEN concurs in the result.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

Under the singular facts of this case I agree that the result reached in Mr. Justice MUSMANNO'S opinion is correct. I do so, however, without reliance on Restatement 2d, Torts, §335.

Mr. Justice EAGEN joins in this concurring opinion.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

This appeal involves the question of the responsibility of a railroad company for damages for injuries sustained by an adult pedestrian when she fell through a hole in the floor of a railroad-owned and maintained bridge.

A reading of the record reveals that the injured plaintiff had been walking on the railroad right-of-way parallel to the railroad tracks until she arrived at the railroad bridge; the bridge—40 to 50 feet in length—contained one set of railroad tracks on either side of which tracks was a wooden-plank walkway laid paral-

lel to the tracks; on the date in question a plank was missing from the walkway and, as the injured plaintiff was walking over the bridge and parallel to the tracks, she fell through the opening in the walkway which was then concealed from her view by snow. There was testimony that for a long period of time the public had walked along the right-of-way of the railroad tracks and over the bridge and that the plank had been missing for about three weeks prior to the accident.

In Pennsylvania we have recognized the existence of permissive crossings *over* the tracks of a railroad. However, our case law unequivocally holds that there cannot be a recognized permissive way parallel or longitudinal to the railroad tracks on the railroad right-of-way and that one who travels longitudinally and parallel to railroad tracks on the railroad right-of-way occupies the status of a trespasser: *Falchetti v. Pennsylvania Railroad Co.*, 307 Pa. 203, 160 A. 859 (1932). See also: *Miller v. Pennsylvania Railroad Co.*, 350 Pa. 424, 39 A. 2d 576 (1944) ; *Davies v. Delaware L. & W. Railroad Co.*, 370 Pa. 180, 87 A. 2d 183 (1952) ; *Tompkins v. Erie Railroad Co.*, 98 F. 2d 49 (1938) ; *Antonas v. Lyford*, 144 F. 2d 763 (1944). In *Tompkins* the Court stated: "The basis for differentiating between longitudinal and crossing paths lies in a balancing of the interests to be protected. People must be permitted to get across the right of way, and where they have been accustomed to cross at the same spot in considerable numbers for a sufficient period of time, a permissive way is established and the railway company must exercise due care to avoid injuring pedestrians who may there be expected. But a wayfarer who walks parallel and adjacent to the track has no such interest as would justify imposing upon the railroad a duty which might interfere with the operation of its trains along the whole length of its right of way, if tres-

passers could acquire such rights." (at p. 52). Our case law clearly places a person such as the instant plaintiff in the status of a trespasser; in my opinion such case law should not be changed as the majority opinion would do.

The instant plaintiff was simply a trespasser. The railroad company owed her the duty not to injure her by wanton or willful misconduct. The instant record does not reveal any evidence of any wanton or willful misconduct on the part of the railroad.

The majority opinion, in addition to overruling *Falchetti,* supra, and the decisions following the *Falchetti* rule, invokes §335 of the Restatement 2d, Torts, to delineate the duty of the railroad in this situation, even if the plaintiff be considered a trespasser. Not only has §335 not been adopted by this Court but it is contrary to the long recognized rule in this Commonwealth, i.e., that a plaintiff who is a trespasser can recover only if the defendant is guilty of wanton or willful misconduct. See: *Frederick v. P. R. T. Co.,* 337 Pa. 136, 10 A. 2d 576 (1940); *Evans v. P. T. C.,* 418 Pa. 567, 212 A. 2d 440 (1965); *Wilson v. Pennsylvania Railroad Co.,* 421 Pa. 419, 219 A. 2d 666 (1966).

I can perceive nothing in the case at bar which justifies setting aside our well established rule which places this plaintiff in the status of a trespasser or the adoption of §335 of the Restatement 2d, Torts. For these reasons I dissent.

Mr. Chief Justice Bell joins in this dissenting opinion.