563 A.2d 891

Christine W. GRAHAM, Executrix of the Estate of Charles H. Graham, Deceased, and Brent L. Miller and Josephine A. Miller, Husband and Wife

v.

SKY HAVEN COAL, INC.

v.

James E. RICOTTA.

Appeal of Christine W. GRAHAM, Executrix of the Estate of Charles H. Graham, Deceased.

James E. RICOTTA and Joan K. Ricotta, Appellant,

v.

SKY HAVEN COAL, INC.

Christine W. GRAHAM, Executrix of the Estate of Charles H. Graham, Deceased and Brent L. Miller and Josephine A. Miller, His Wife

v.

SKY HAVEN COAL, INC.

v.

James E. RICOTTA.

Appeal of Brent L. MILLER and Josephine A. Miller.

Superior Court of Pennsylvania.

Argued Feb. 27, 1989.

Filed Aug. 4, 1989.

600

John D. Briggs, Centre Hall, for Graham, appellant (at No. 1247) and appellee (at No. 1249) and participating party (at No. 1248).

Girard N. Evashavik, Pittsburgh, for Ricotta, appellant (at No. 1248) and appellee (at Nos. 1247 and 1249).

John E. Wall, Pittsburgh, for Sky Haven Coal, Inc., appellee (at Nos. 1247, 1248 and 1249).

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, McEWEN, OLSZEWSKI, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

CAVANAUGH, Judge:

The primary issue in this appeal is whether the trial court properly instructed the jury on the duty of the possessor of land to one who enters the land, and whether a new trial should have been granted to the plaintiffs below, who are the appellants in this court.

The evidence presented at trial established that a strip mining operation in Clearfield County, Pennsylvania, conducted by Sky Haven Coal, Inc. had experienced a series of thefts at the site during December, 1982.[1] There was an access road leading from a state road to the mining operation. As a result of vandalism and thefts, the owner of the mine endeavored to close off the access road when the mine was not in operation. Joseph Owens, who owns Sky Haven Coal, Inc., instructed his foreman to place a cable across the road to prevent vehicles from entering the area during non-operating hours. Ditches were also dug along each side of the access road to prevent unauthorized trucks from entering the site. The cable was about $5/8''$ in diameter and was attached to two steel poles placed about 26 feet apart. The poles were on each side of the road, and when the strip mining operation was shut down during the early hours of

---

1. Sky Haven Coal, Inc. leased the coal mining site, which was known as Allport, from the Estate of Frank Albert, Deceased. The co-executrices of the estate, Anamae Pezzula and Alta F. Albert, were defendants in the court below. Allport is approximately 150 acres in area.

the morning, the cable was stretched across the road and secured with a padlock. The cable was rusty and had fluorescent plastic streamers on it. It was hung at a distance about 3 feet to 4 feet from the ground. There were no trespassing signs posted on the property through which the access road ran, and also a sign at the entrance of the access road that stated in part: "BLASTING AREA. KEEP OUT." [2] The cable was placed across the access road about 1,000 feet in from the state road.

On the evening of February 8, 1983, James E. Ricotta, who lived near the strip mine, was expecting a friend, Brent L. Miller, and an acquaintance, Charles H. Graham, to visit him. The weather was very cold and windy, and it was snowing very hard. When the two men did not arrive at Mr. Ricotta's house as expected, he went to bed. About midnight, Miller and Graham arrived and had something to eat.[3] The three then went for a ride in Ricotta's car and subsequently went for another ride, notwithstanding the extremely bad weather, in a vehicle which Mr. Ricotta built himself and which he called a "work buggy." [4] Their destination was the nearby strip mine to watch the nighttime operations of the mine which they thought were then being conducted.

Mr. Ricotta's "work buggy" was constructed to be an oversized wheelbarrow. The front half of the vehicle was constructed from a 1967 Chevrolet truck and the rear was

2. The sign in its entirety stated:
 Blasting Area. Keep Out.
 Air Horn Warning Signals.
 Blasting, and then three air horn signals at short intervals.
 All clear, one long horn signal.
 James E. Ricotta testified that "To me, the sign means when you hear the warnings, to keep out. When you hear the whistle for the blasting, that means there's going to be a blasting coming up soon. To clear the area."

3. Concerning the late arrival, Mr. Ricotta testified:
 From what I remember, they got lost. And plus, with it snowing, the roads look different.

4. Mr. Ricotta drove the "work buggy" on the public highways although the vehicle was not licensed for such operation.

made from a 1963 Cadillac. The vehicle was open and had no windshield. A bench was located behind the engine on which the operator and a passenger could sit. The back of the vehicle was built as a dump truck. The vehicle had two headlights which Mr. Ricotta described as follows: "One had a light in it that was a light bulb off a fire truck which gave it real bright light, and the other was a fog-light type light."

The three men set off in the "work buggy" with Ricotta driving, Mr. Graham seated on the bench beside him and Mr. Miller on the back of the vehicle in the bed of the dump truck. They drove through the snowstorm to an airport and then around a friend's house and then on a macadam road where they turned off at the access road leading to the mining site. Mr. Ricotta was aware of the sign which stated that it was a blasting area and to "keep out." He proceeded up the access road at a speed of 10–15 miles per hour, and the time was then about 2:30 in the morning of February 9th. The strip mining was not operating at that time, as it was closed from 1:00 A.M. until 6:00 A.M. on the date in question. Mr. Ricotta did not see the cable across the road and struck it with his "work buggy". The cable hit the radiator of the vehicle, pushed it back about four inches, and then struck Ricotta, knocking him temporarily unconscious. His two passengers were also struck by the cable. Mr. Graham died shortly afterwards and Mr. Miller was injured.

The Executrix of the Estate of Charles H. Graham commenced an action for wrongful death and a survival action against Sky Haven Coal, Inc., and Anamae Pezzula and Alta F. Albert, Executrices of the Estate of Frank Albert. Brent L. Miller and Josephine A. Miller joined in the suit against the same defendants. James E. Ricotta and Joan K. Ricotta, his wife, commenced separate actions against Sky Haven Coal, Inc. and the Estate of Frank Albert. James E. Ricotta was joined as an additional defendant. All

of the actions were consolidated for trial and on appeal.[5]

Following a jury trial before Reilly, P.J., a verdict was entered in favor of Sky Haven Coal, Inc. and against additional defendant, John E. Ricotta, but awarded no damages against Ricotta.[6] The plaintiffs' motions for a new trial were denied and they have appealed to this court.

 The decision of the trial court in denying a new trial is within its sound discretion and will be sustained on appeal unless the appellate court determines that the trial court palpably abused its discretion. *Leslie v. Pennco, Inc.,* 323 Pa.Super. 23, 470 A.2d 110 (1983). A motion for new trial does not test the verdict itself, but rather the legal proceedings resulting in the verdict, and the basis of a new trial motion is not that the verdict is unsupported by sufficient evidence, but that an alleged trial error affected the verdict. *Dorn v. Stanhope Steel, Inc.,* 368 Pa.Super. 557, 534 A.2d 798 (1987), appeal denied, 518 Pa. 656, 544 A.2d 1342 (1988). Review of an order denying grant of a new trial imposes on an appellate court the duty to review all the evidence. *Klyman v. Southeastern Pennsylvania Transportation Authority,* 331 Pa.Super. 172, 480 A.2d 299 (1984); *Seewagen v. Vanderkluet,* 338 Pa.Super. 534, 488 A.2d 21 (1985); *Leslie v. Pennco, Inc., supra.* The appellants allege that the trial court erred in its instruction concerning wanton misconduct and in refusing to charge the jury on the instructions which they submitted.

There was evidence that recreational vehicles had used the strip mining site at all hours of the day and night. Mr. Ricotta testified that he had gone on the site for many years and had encountered employees of the mining company who did not tell him to leave. Mr. Ricotta also acknowledged, as stated above, that he was aware of the sign at the

5. On September 9, 1986, the court below entered an order approving the dismissal of Anamae Pezzula and Alta F. Albert, Executrices of the Estate of Frank Albert, Deceased, from the actions. They are not involved in this appeal as parties.

6. None of the parties in the action have challenged the entry of the verdict against Ricotta which did not award any monetary damages against him.

access road which stated that the site was a blasting area and to keep out. Also, the property was posted with "No Trespassing" signs.

The appellants contend that the following excerpts from the charge confused the jury and constitute the basis for granting a new trial:

If you find from the evidence that the plaintiffs here were trespassers, if you find that they were on this property without consent, without permission, then the standard of care or the duty would be as follows: In that event if they are trespassers, if the defendant knew or if the defendant had reason to know of the plaintiffs' presence, the defendant's only duty to the plaintiffs was to refrain from wanton or reckless conduct which would necessarily cause injury to the plaintiff.

If they were trespassers, the defendant—and if the defendant knew or had reason to know of the plaintiffs' presence, the defendant's only duty to the plaintiffs was to refrain from wanton or reckless conduct which would necessarily cause injury to the plaintiff or plaintiffs.

. . . . .

Negligence—and we'll be going over ordinary negligence in just a moment. But negligence consists of inattention or inadvertence. Whereas wantonness exists where the danger to the plaintiff, the plaintiffs, though realized, is so recklessly disregarded that even—even though there be no actual intent, there is at least a willingness to inflict injury. A conscious indifference to the perpetration of the wrong.

■ We must read the charge as a whole and not isolated portions to determine whether it correctly sets forth the law. *Slavish v. Ratajcyzak*, 277 Pa.Super. 272, 419 A.2d 767 (1980). A determination must also be made by the appellate court whether error was prejudicial to the complaining party, if it existed. *Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985).

The appellants contend that the excerpts quoted from the charge unequivocally conveyed to the jury that in order to impose liability on Sky Haven Coal, Inc. for wanton misconduct, it would have had to foresee that these particular plaintiffs, Messrs. Ricotta, Graham and Miller, would be likely to trespass on its land. The appellants argue that "the trial court erroneously instructed the jury that the defendants [Sky Haven Coal, Inc.] could only be liable if it knew of the presence of these particular plaintiffs." (Appellant Graham's brief, p. 8) We do not read the charge in that way. A fair reading of the charge indicates that when the court referred to the defendant knowing or having reason to know of the plaintiffs' presence, it was referring to plaintiffs in the sense of "persons". No reasonable jury would conclude the court meant that in order to impose liability, the defendant had to know, or have reason to know of the specific presence of the individual plaintiffs.

The court proceeded to charge the jury as follows:

And finally, wantonness or recklessness means that the Defendant has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it. And so great as to make it highly probable that harm would follow. It is usually accompanied by a conscious indifference to the consequences.

That, members of the jury, is reckless or wanton conduct. *And if you find that the plaintiffs were at the time and place of the accident trespassers upon the property of the defendant, then the defendant would have been required to refrain from reckless or wanton conduct. And if you find that his conduct on that occasion in the surrounding circumstances of the condition of the land was reckless and wanton, then under those circumstances, the defendant would have to answer to the plaintiffs for the damages sustained.*

If you find that the plaintiffs were trespassers and that the defendant's conduct at that time did not rise to the level of reckless and wanton conduct, then the Defendant

would not be responsible to the plaintiffs in damages for the injuries sustained. (Emphasis added.)

■ Isolated portions of the charge may not be read to form the basis of a new trial, if the charge as a whole correctly sets forth the law. *Reilly v. Southeastern Pennsylvania Transportation Authority, supra; Murphy v. Publicker Industries,* 357 Pa.Super. 409, 516 A.2d 47 (1986). If the plaintiffs were trespassers, then the legal obligation to them was to avoid willful or wanton misconduct. *Evans v. Philadelphia Transportation Company,* 418 Pa. 567, 212 A.2d 440 (1965). The Supreme Court in *Evans, supra,* quoting from Prosser, Torts § 33 at Page 151 (Second Ed.1955) described wanton misconduct as intentionally doing an act of unreasonable character in disregard of a known risk or a risk so obvious that one must be presumed to have been aware of it, and a risk so great as to make it highly probable that harm would follow, and such conduct is usually accomplished by a conscious indifference to the consequences. The charge to the jury followed the rule of *Evans, supra.*

■ The appellant's rely on *Antonace v. Ferri Contracting Company, Inc.,* 320 Pa.Super. 519, 467 A.2d 833 (1984) to support their theory that the court erred because it added the element that knowledge of the specific plaintiffs' presence was required. In *Antonace, supra,* a sixteen-year old boy trespassed on property while operating a dirt bike. He struck a steel cable placed across the roadway, which flew up striking him in the neck, resulting in his death. The case was tried before Zappala, J., now Justice Zappala, who properly charged the jury concerning wanton misconduct at the outset of the charge, but *thereafter, the court spoke solely in terms of negligence, including contributory negligence, when discussing liability.* We noted at 320 Pa.Super. at 528, 467 A.2d at 838:

Just prior to dismissing the jury for deliberation, the trial court described the possible verdicts which it could reach. All six described spoke solely in terms of negli-

gence. (R. 445a–447a). Nowhere was willful or wanton misconduct mentioned.

A verdict form with special interrogatories was used. All questions spoke in terms of negligence. Once again, there was no mention of willful or wanton misconduct.

In our discussion of the trial court's refusal to grant a new trial, we held the charge to be erroneous because the court essentially submitted the matter to the jury as a negligence case. In the case *sub judice*, the appellants introduced evidence to establish that they were not trespassers, but were licensees instead. They submitted evidence that the property was not posted and that it was the custom in Clearfield County that one could use unposted private property for recreational purposes as hunting and operating dune buggies and snowmobiles. The charge properly delineated to the jury the discrete obligations owed by a possessor of land to a licensee and a trespasser. The appellee, Sky Haven Coal, Inc., would owe a higher duty to the appellants if they were licensees than if they were trespassers, and the charge concerning licensees could not have prejudiced the appellants.

The appellants would have us find error in the failure of the court below to adopt its fourth point for charge which read as follows:

4. For you to find wanton misconduct on the part of the defendant, actual prior knowledge of the danger to the plaintiffs need not be established. *Antonace v. Ferri Contracting Company, Inc.*, 320 Pa.Super. 519, 467 A.2d 833 (1983). If you find that the defendant realized, or at least had knowledge of sufficient facts to cause a reasonable man to realize the danger existed, and that the defendant could have taken reasonable measures to avoid the accident, then the defendant was guilty of wanton misconduct by recklessly disregarding the danger posed by the cable.

The requested instruction is not more accurate than the instructions given. The court in its charge correctly de-

scribed wanton conduct and the liability that attaches to such conduct if directed at a trespasser.

■■■ The appellants also contend that the court erred in not granting an instruction under § 335 of the Restatement (Second) of Torts as requested in the points for charge submitted by the Executrix of the Graham Estate.[7] We find no error in refusing to specifically charge under § 335. The purpose of the trial court's charge to the jury is to apprise the members of the jury of the legal principles by which they must decide the case and this does not require the trial court to use any prescribed language, provided the applicable law is fully conveyed. *Hawthorne v. Dravo Corp., Keystone Division,* 352 Pa.Super. 359, 508 A.2d 298 (1986); *Seewagen v. Vanderkluet,* 338 Pa.Super. 534, 488 A.2d 21 (1985); *Berman v. Radnor Rolls, Inc.,* 374 Pa.Super. 118, 542 A.2d 525 (1988). The duty owed to trespassers by a property owner is only to refrain from willful or wanton misconduct. *Krivijanski v. Union Railroad Co.,* 357 Pa.Super. 196, 515 A.2d 933 (1986).[8]

7. Section 335 Restatement (Second) of Torts states:

§ 335. Artificial Conditions Highly Dangerous to Constant Trespassers on Limited Area

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

8. Appellants have cited no cases which state that Pennsylvania has adopted § 335 of the Restatement as part of its law. Our research discloses only two cases which refer to § 335. In *Franc v. Pennsylvania Railroad,* 207 Pa.Super. 70, 73–4, 215 A.2d 303, 304 (1986) this court stated:

As a trespasser, plaintiff would have us adopt § 335 of the Restatement of Torts and consider the testimony in light of the standard of care suggested there. To do so, we would have to ignore the decisions of our Supreme Court defining the duty owed to the trespasser. This we cannot do. Our Supreme Court has said

Finally, the appellants argue that the court below erred in allowing the testimony of Anamae Pezzula concerning the purchase and posting of "No Trespassing" signs on or near the property leased to Sky Haven Coal, Inc. by the Albert Estate, and newspaper notices that trespassing on the property was prohibited. The basis for the objection is that the plaintiffs had no notice of this testimony and exhibits that were entered, and they were prejudiced as a result. This argument lacks merit as Mrs. Pezzula was a party to the lawsuit and could have been subject to discovery under Pa.R.C.P. 4005 and 4007.1. The defendants did not conceal her identity, and she was obviously known

that the only duty owed to a trespasser by a property owner is the avoidance of wanton or intentional injury in maintaining his property.

The Supreme Court reversed in *Franc v. Pennsylvania Railroad,* 424 Pa. 99, 225 A.2d 528 (1967) opinion by Musmanno, J.; dissenting opinion by Jones, J., in which Bell, C.J. joined; concurring opinion by Roberts, J.; Cohen and Eagan, JJ. concurred in the result. The case involved a railroad bridge in which there was a hole in the flooring through which the plaintiff, a trespasser, fell. The lead opinion stated that the railroad company knew or should have known of the defect in the floor of the bridge and it was liable for failing to exercise reasonable care to warn users of the bridge of the condition and the risk involved in crossing the bridge. Factually, the case is not analogous to our own, and in our opinion does not amount to the adoption of § 335 as the law of Pennsylvania. As Justice Jones pointed out in his dissenting opinion, 424 Pa. at 107, 225 A.2d at 531:

Not only has Section 335 not been adopted by this Court but it is contrary to the long recognized rule in this Commonwealth, i.e. that a plaintiff who is a trespasser can recover only if the defendant is guilty of wanton or willful misconduct.

Justice Cohen, in his concurring opinion stated that he would reach the same conclusion as Justice Musmanno without reliance on § 335.

The Restatement (Second) of Torts, Section 335 gives only one illustration of a factual situation to which it applies, as follows:

1. A, knowing that persons are in the habit of trespassing upon his land at a point close to his unfenced powerhouse, permits a high voltage electric wire, strung at a height of five feet and so concealed by vegetation as to be difficult of observation, to become uninsulated. B, a trespasser, wanders from the adjacent part of the land into the yard of the powerhouse and comes into contact with the wire. The contact causes B's death. A is subject to liability for B's death.

This illustrates that § 335 does not apply to the situation involved in the instant case where the owner of land placed a cable across an access road in an attempt to bar trespassing vehicles from entering its mining site.

to the plaintiffs as she was a defendant in the actions brought in the court below. The appellants' contention that they were surprised by her testimony and exhibits introduced concerning the newspaper notices and the purchase of "No Trespassing" signs is of no avail. Mrs. Pezzula was a co-executrix of the estate that owned the land and was a party to the litigation. The plaintiffs had ample opportunity to discover, by way of deposition or interrogatories, her knowledge concerning the land. The admission of evidence is peculiarly within the discretion of the trial court. *Bessemer Stores, Inc. v. Reed Shaw Stenhouse, Inc.,* 344 Pa.Super. 218, 496 A.2d 762 (1985). We will reverse the ruling of the trial court concerning the admission of evidence, only if there is an abuse of discretion. *Durkin v. Equine Clinics, Inc.,* 376 Pa.Super. 557, 546 A.2d 665 (1988). It would be too drastic to exclude the testimony of a witness unless the facts made it clearly necessary. *Feingold v. Southeastern Pennsylvania Transportation Authority,* 339 Pa.Super. 15, 488 A.2d 284 (1985), order affirmed by *Feingold v. Southeastern Pennsylvania Transportation Authority,* 512 Pa. 567, 517 A.2d 1270 (1986). The court below manifestly did not abuse its discretion in admitting the objected to testimony and evidence.

Judgment affirmed.

BROSKY, J., files concurring and dissenting opinion in which JOHNSON, J., joins.

BROSKY, Judge, concurring and dissenting.

I concur in the majority holding that the Pezzula testimony, and the documents from which she testified, were properly admitted into evidence. I also concur in the position that it was unnecessary for the trial court to read verbatim Section 335 of the Restatement (Second) of Torts in the jury charge.

However, I cannot agree that the jury charge on wanton misconduct was not ambiguous and misleading. Rather, I

would grant appellant Graham a new trial based upon the inadequacy of this part of the charge.[1]

The primary purpose of the trial court's charge to the jury is to apprise the members of the jury, in an understandable fashion, of the legal principles by which they must decide the case. It is well settled that this does not require the trial court to use any prescribed language, such

---

1. In its dismissal of this issue as meritless, the trial court opinion states, in part, that all appellants waived this issue by failing to raise objection to this part of the charge in chambers prior to the charge. However, the trial court does not deny, and the record substantiates, that counsel for appellants Graham and Miller made two attempts before the jury retired to preserve their objections, and to have the court read the requested supplemental point, to be discussed at greater length *infra*. See Graham R.R., pp. 538a, 561a–562a. As the main purpose behind requiring a specific objection to the court's charge, is to permit the trial court the opportunity to correct alleged errors before the jury retires, see *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114, 116 (1974), we find that their counsel took sufficient action to preserve their objection, and did not waive this issue for purposes of appellate review.

The Millers, however, have reached a settlement with Sky Haven during the pendency of this appeal.

The Ricottas, on the other hand, have waived this issue. The Ricottas' counsel did not raise this objection, and did not join in the objection of co-counsel, at trial. To preserve a specific objection to a portion of the charge, it is settled that "the complaining party *or parties* must ... make a timely specific objection to the charge as given". *Vernon v. Stash*, 367 Pa.Super. 36, 532 A.2d 441, 447 (1987) (Emphasis supplied.) In the absence of some outward indication that counsel joins in the objection raised by co-counsel, the trial court is being asked to guess or infer from the circumstances whether all parties share the same objection to the charge as given. Such speculation is not the trial court's responsibility; it is counsel's responsibility to protect the client's interests.

I am aware of the claim by Ricottas' counsel that all plaintiffs' counsel had a pre-trial understanding that the objection of one would act as the objection of all. However, as Ricottas' counsel freely concedes, that agreement is not of record. Furthermore, the Ricottas' counsel has not exercised his options, pursuant to Pa.R.A.P. 1926, to have the record corrected or modified to reflect this agreement. We may not consider any averments by counsel that are not supported in the record, see *Spain v. Vicente*, 315 Pa.Super. 135, 461 A.2d 833, 838 n. 3 (1983), citing *McCaffrey v. Pittsburgh Athletic Assoc.*, 448 Pa. 151, 293 A.2d 51 (1972).

Hence, the Ricottas have lost their entitlement to a new trial based on this issue.

I therefore would be recommending the grant of a new trial for appellant Graham only.

as that requested by a party, to perform this function, provided the applicable law is fully conveyed. See *Hawthorne v. Dravo Corp., Keystone Div.*, 352 Pa.Super. 359, 508 A.2d 298, 302–03 (1986); see also *Seewagen v. Vanderkluet*, 338 Pa.Super. 534, 488 A.2d 21, 26 (1985). Moreover, not every misstatement of the law is grounds for reversal. The charge must be viewed in its entirety against the background of the evidence to determine whether or not error was committed, and whether that error was prejudicial to the complaining party. *Elder v. Orluck*, 334 Pa.Super. 329, 483 A.2d 474, 481 (1984). Normally, for a party to be entitled to a new trial on the basis of prejudicial error flowing from the charge, the instructions complained of must be fundamentally in error, and it must appear that the erroneous instructions might have been responsible for the verdict. However, a new trial is also appropriate where the instructions, although perhaps not erroneous, are somehow ambiguous such that the jury may have been misled or confused. *Hawthorne*, supra.

The majority quotes a portion of the charge below, and, upon finding that portion to contain no fundamental error per se in its recitation of the applicable law, concludes that a new trial is not warranted. This approach, however, does not take the totality of the charge into account, for it ignores the problems created by that part of the charge directly preceding the quoted portion. It is the preceding part which appellant Graham contends misled the jury:

.... Once you have determined what the status was of these plaintiffs, you will then know what standard of care to apply to the defendant.

If you find from the evidence *that the plaintiffs here* were trespassers, if you find that they were on this property without consent, without permission, then the standard of care or the duty would be as follows: *In that event if they are trespassers, if the defendant had reason to know of the plaintiffs' presence, the defendant's only duty to the plaintiffs was to refrain from*

*wanton or reckless conduct which would necessarily cause injury to the plaintiffs?*

If they were trespassers, the defendant—*and if the Defendant knew or had reason to know of the plaintiffs' presence, the defendant's only duty to the plaintiffs* was to refrain from wanton or reckless conduct which would necessarily cause injury to the plaintiff or plaintiffs.

Wanton or reckless conduct. That has been defined by the Court as follows: Wanton conduct is something different from negligence, however gross. Different not merely in degree but in kind and evincing a different state of mind on the part of the Defendant.

Negligence—and we'll be going over ordinary negligence in just a moment. But negligence consists of inattention or inadvertence. *Whereas wantonness exists where the danger to the plaintiff, the plaintiffs, though realized, is so recklessly disregarded that even—even though there be no actual intent, there is at least a willingness to inflict injury.* A conscious indifference to the perpetration of the wrong . . . .

(Graham R.R., pp. 513a–514a.) (Emphasis supplied.)

Appellant Graham contends that the above, whether taken in isolation or together with the portion quoted by the majority, was ambiguous and misleading to the jury in that it left the impression that a defendant must either know, or have reason to know, of the presence of the *particular plaintiff or plaintiffs* at issue to be liable for injuries caused by wantonness or recklessness. Appellant further contends that the supplemental point for charge number four would have cleared up any ambiguity in the court's charge, but was erroneously refused, thereby making the instruction on wanton misconduct inadequate. I agree.

Under current law, the duty of care owed by a landowner or occupier of land to a trespasser, is to refrain from willful or wanton misconduct. *Antonace v. Ferri Contracting Co., Inc.*, 320 Pa.Super. 519, 467 A.2d 833, 835 (1983);

*Evans v. Philadelphia Transportation Co.,* 418 Pa. 567, 212 A.2d 440, 442 (1965).

Willful misconduct means that the actor desired to bring about the resultant harm, or was at least aware that it was substantially certain to ensue; this means that willful conduct requires *actual prior knowledge* of the trespasser's peril. *Antonace,* supra; *Evans,* supra.

Wanton misconduct, by contrast, means that an actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences, and not a desire to bring them about; as such, actual prior knowledge of the *particular* injured person's peril is not required. It is enough that the actor realizes, or at least has knowledge of sufficient facts that would cause a reasonable man to realize, that a peril exists, for a sufficient time beforehand to give the actor a reasonable opportunity to take means to avoid the injured person's accident; the actor is wanton for recklessly disregarding the danger presented. *Antonace,* supra; *Evans,* supra.

The majority's assertions to the contrary notwithstanding, the *Antonace* case is strikingly similar to the matter *sub judice.* The appellant, Ferri Contracting Co., Inc., had leased property for storage of equipment and materials to be used on a sewer project. Due to vandalism problems, Ferri had strung a steel cable across one of three dirt access roadways. The decedent, a dirt bike rider, went biking with friends on that particular road, came into contact with the cable, and was struck in the neck. The injury proved fatal. On the issue of the "knowledge" required for a finding of wanton, as opposed to willful, conduct, our Court reiterated that actual knowledge of a specific trespasser is not required, and continued as follows:

> Applying the principles from the foregoing authorities to the case *sub judice, it is clear that a jury could conclude that appellant knew dirt bike riders such as the*

*decedent were using the property*, and that in view of this knowledge, erection or maintenance of a steel cable, in a position of limited visibility, without markings or warning signs, constituted, "an act of unreasonable character, in disregard of a risk known to him or so obvious that he must have been aware of it, and so great as to make it highly probable that harm would follow." Prosser, *Torts* § 33 at 151 (2nd ed 155), quoted with approval in *Evans, supra,* 418 Pa. at 574, 212 A.2d at 443.

*Antonace,* supra, 467 A.2d at p. 837. (Emphasis supplied.)

The majority attempts to circumvent the patent applicability of *Antonace* by asserting that the actual holding of *Antonace* pertained solely to the trial court's error in charging only in terms of negligence and contributory negligence upon reaching the liability section of the charge, after giving an essentially correct recitation of the law on wanton misconduct. This, simply stated, is an incorrect characterization of the *Antonace* holding, for it ignores the fact that the *Antonace* court was called upon to resolve *two separate* allegations of error: 1) whether a new trial was warranted based upon the aforementioned problem with the liability section of the charge, i.e. its reference to negligence terminology alone; *and* 2) whether judgment n.o.v. should have been granted on the basis that *the defendant had not known of this particular dirt biker's presence on the property. Antonace,* supra, 467 A.2d at pp. 836–37, 838. Our court found that judgment n.o.v. had been properly denied by the trial court, as a landowner needn't know of a particular trespasser's presence to act wantonly.

This portion of the decision, affirming the denial of judgment n.o.v., is no less precedential than the portion of the opinion granting a new trial. The *Antonace* court was required to resolve the legal sufficiency of the evidence as to the defendant's knowledge of trespassers; it would have been improper to grant a new trial based upon the inadequacy of the liability charge, if the plaintiff had failed to produce sufficient evidence of knowledge to support a finding of wantonness. The majority may not, and I will not,

ignore the clear applicability, and precedential value, of *Antonace*'s resolution of the knowledge issue in its holding on the n.o.v. question.

Moving, then, to a review of the charge *sub judice*, I would agree with appellant that the charge was somewhat ambiguous as to the knowledge required for wanton misconduct. As pointed out by counsel at trial, statements such as "if the defendant knew or had reason to know of *the plaintiffs' presence*", and "where the danger to *the plaintiff, the plaintiffs,* though realized, is so recklessly disregarded", are not outright erroneous, but fail to clarify whether an actor must know of a particular plaintiff-trespasser, or must only know of the presence of trespassers *such as* the plaintiff, in order to be wanton in his behavior.

The supplemental point for charge initially requested by appellant, pertaining to the requisite knowledge for wantonness, and requested again after the charge was given, was as follows:

4. For you to find wanton misconduct on the part of the defendant, *actual prior knowledge of the danger to the plaintiffs need not be established. Antonace v. Ferri Contracting Co., Inc.,* 320 Pa.Super. 519, 467 A.2d 833 (1983). If you find that the defendant realized, or at least had knowledge of sufficient facts to cause a reasonable man to realize the danger existed, and that the defendant could have taken reasonable measures to avoid the accident, then the defendant was guilty of wanton misconduct by recklessly disregarding the danger posed by the cable. (Emphasis supplied.)

This was a clear and accurate statement of the law, and could have remedied the ambiguity created by the trial court's charge. Furthermore, had the trial court had reservations about reading the point verbatim, it was nonetheless at liberty to act upon the request by Graham's counsel to, at the least, clarify for the jury that it was "not necessary ... for the defendant Sky Haven to be *actually* aware of the presence of *these specific* individuals ..." [2]

2. Graham R.R., p. 561a.

618

Moreover, as the jury did find that decedent Graham, Miller, and Ricotta had been trespassers, but that Sky Haven had not been guilty of wanton misconduct, I cannot accept that this ambiguity could not have contributed to the verdict. While it is possible that the jury, perhaps, felt that Sky Haven could not have appreciated the general danger to trespassers presented by the cable, it is equally possible that the jury felt that Sky Haven could not have possibly known or anticipated the presence of *these particular* men, and thus, had not acted wantonly.

Hence, while I would affirm the denial of the Ricottas' post-trial motions, I would reverse and remand for a new trial on the Graham cause of action; such is the only method available to ensure a verdict based upon the applicable law.