577 A.2d 894

**Henrietta OTT, Appellant,**

v.

**UNCLAIMED FREIGHT CO., L & J Realty Company.**

Superior Court of Pennsylvania.

Submitted April 16, 1990.

Filed July 11, 1990.

Jeffrey M. Voluck, Philadelphia, for appellant.

Robert A. Selig, West Conshohocken, for Unclaimed Freight, appellee.

Maureen A. Mahoney, Philadelphia, for L & J, appellee.

Before McEWEN, OLSZEWSKI and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from an order of the trial court which granted summary judgment in favor of appellees. Appellant presents the following two issues for review: (1) whether a possessor of land owes a duty to individuals, who walk across a parking lot located on the land, to keep the lot free of snow and ice; and (2) whether the trial court erred in granting summary judgment in favor of appellees pursuant to the assumption of risk doctrine.

The relevant facts are as follows. On February 2, 1987, appellant, Henrietta Ott, parked her car and was on her way to the Frankford El (El).[1] Ott decided to take a shortcut, by walking first through a bank parking lot or driveway, and then through a parking lot controlled by

---

1. The El is part of Philadelphia's mass transportation system.

appellees, Unclaimed Freight Co. (USF, Inc.)[2] and L & J Realty, Co. (L & J)[3]. According to Ott, this shortcut was used by other individuals. Although snow and ice were present on the surface of the parking lot and were readily apparent to Ott, she attempted to cross the parking lot. After proceeding over approximately one-third of the lot, Ott slipped and fell on a patch of ice. Ott sustained a broken wrist, dizzy spells, and neck and chest pains as a result of the fall, and commenced suit against USF and L & J to recover for these injuries. After taking Ott's deposition, appellees filed a motion for summary judgment. In granting summary judgment in favor of appellees, the trial court concluded that appellees owed no duty to Ott because she assumed the risk of crossing the ice-covered parking lot. For the reasons set forth below, we affirm the order of the trial court.

In reviewing the trial court's grant of summary judgment, we are guided by the following standard:

> Summary judgment may be entered only in those cases which are clear and free from doubt.... In passing on a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party.... It is not the court's function to decide issues of fact but solely to determine if there is an issue of fact to be tried.... Any doubt must be resolved against the moving party.... The court, in ruling on a motion for summary judgment, must ignore controverted facts contained in the pleadings ... [and] restrict its review to the material authorized by Rule 1035 to be filed in support of and in opposition to the motion for summary judgment

---

**2.** When appellant initially filed her complaint, she incorrectly named USF, Inc. as Unclaimed Freight Co. To correct this error, counsel for USF and Ott stipulated to an amendment of the caption so that USF, Inc. would be the named defendant. For the purpose of this appeal, USF, Inc. will be referred to as USF.

**3.** The record indicates that L & J was the owner of the land on which the parking lot was located. A building was also located on this property, which was owned by L & J and was leased to USF and other tenants.

and *only* those allegations in the pleadings that are uncontroverted....

*Krause v. Great Lakes Holdings, Inc.,* 387 Pa.Super. 56, 63, 563 A.2d 1182, 1185 (1989), *allocatur denied,* 524 Pa. 629, 574 A.2d 70 (1990) (citations omitted) (emphasis in original).

■ Ott first argues that appellees owed her a duty to keep their sidewalk in a safe condition. The facts of this case, however, do not involve a sidewalk which abuts a public roadway, rather a private parking lot, which is set back from the public roadway is at issue.[4] Therefore, the duty owed by a possessor of land to the public to maintain sidewalks, which are located on his or her property and which border a public roadway, is irrelevant to this case.

■ Initially we observe that appellee L & J owed no duty to Ott. "As a general rule, a landlord out of possession is not liable for injuries sustained by persons on his or her property unless the landlord has retained the right to control the portion of the premises on which the injury occurred." *Oswald v. Hausman,* 378 Pa.Super. 245, 255–256, 548 A.2d 594, 600 (1988). *See also* the Restatement (Second) of Torts § 356. There is no evidence that L & J retained the right to control the parking lot; rather, the record demonstrates that USF was responsible for controlling and maintaining the parking lot. *See* clause (h) of Lease attached to the Answer and New Matter filed by L & J, which specifically provides that USF was responsible for maintaining the parking lot free of snow and ice. Under these circumstances, L & J owed no duty to Ott, and was therefore entitled to have summary judgment entered in its favor.

In view of our conclusion that L & J owed no duty to Ott, the remainder of our discussion will focus on whether USF, as a tenant in possession of the premises, owed a duty to Ott to maintain the parking lot free of snow and ice. With

---

4. Ott testified in her deposition that she had to first cut through the Philadelphia National Bank (PNB) parking lot or driveway to get to USF's lot. *See* Deposition of Ott at p. 7.

respect to this issue, the Pennsylvania Supreme Court has observed that "[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee or invitee." *Carrender v. Fitterer*, 503 Pa. 178, 184, 469 A.2d 120, 123 (1983). Thus, in order to ascertain what duty of care was owed to Ott, we must first determine whether Ott was a trespasser, licensee or invitee.[5]

The Restatement (Second) of Torts § 329 defines a trespasser as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *See also Oswald, supra,* 378 Pa.Super. 245, 253, 548 A.2d 594, 598 (1988). In contrast, a licensee is "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." § 330 of the Restatement; *see also Oswald,* 378 Pa.Super. at 254, 548 A.2d at 599. Finally, an invitee is described as follows:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with the business dealings with the possessor of the land.

Restatement (Second) of Torts § 332. After reviewing the above definitions, it is evident that Ott cannot be classified as an invitee since the land was not held open for a public purpose and Ott was not invited to enter the land as a member of the general public. Similarly, Ott was not a business visitor who had direct or indirect business dealings with either USF or L & J. *See* § 332 and the comments thereto for examples of public invitees and business visi-

---

**5.** USF asserts that Ott was a trespasser. *See* Brief of USF at p. 4. It does not appear from the record that Ott denies this characterization. However, based on Ott's statements that she and other individuals used this route, it is at least arguable that Ott was a licensee.

tors. However, the question remains as to whether Ott was a trespasser or a licensee.

In this case, Ott testified that she frequently used the shortcut across USF's parking lot to get to the El. *See* Deposition of Ott at pp. 13–14, and 47. She further testified that other individuals used this route as a shortcut. *See id.* at p. 12. USF did not offer any evidence to rebut these statements. There was also no indication that USF posted a notice or otherwise objected to Ott or other persons cutting across the parking lot. Under these facts, we are unable to determine whether USF's consent to cross the property can be inferred.[6] *See* comments c and e to § 330 of the Restatement. As a result, we will address the duty of care owed to both trespassers and licensees, respectively.

Under Pennsylvania law, it is well settled that "[t]he duty owed to trespassers by a property owner is only to refrain from willful or wanton misconduct...." *Graham v. Sky Haven Coal, Inc.*, 386 Pa.Super. 598, 609 and 614, 563 A.2d 891, 896 and 899 (1989).

Willful misconduct means that the actor desired to bring about the resultant harm, or was at least aware that it was substantially certain to ensue; this means that willful conduct requires *actual prior knowledge* of the trespasser's peril.... Wanton misconduct, by contrast, means that an actor has intentionally done an act of an

6. This statement should not be construed to imply that Ott was in fact a licensee. In making this statement, we merely recognize that her status is questionable in view of the comments to the Restatement. *See e.g.,* comment e to § 330 which provides that consent may be expressed by acts, rather than words. As an illustration, comment e suggests that where a possessor permits individuals to cut across his or her property as a shortcut, the individuals who cross the property will be treated as licensees, and not trespassers, unless the possessor posts notice or otherwise manifests an objection. However, comment c to § 330 states that under certain circumstances, consent may not necessarily be inferred from a landowner's failure to object or post a warning. Thus, whether a possessor's conduct may be construed as consent, depends upon the particular facts and circumstances of each case. As such facts are not fully developed in this record, we cannot with certainty determine whether USF consented to Ott's use of its parking lot as a passageway. Our inability to precisely label Ott as a trespasser or licensee does not hamper our review of this case, however.

unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences, and not a desire to bring them about; as such, actual prior knowledge of the particular injured person's peril is not required. It is enough that the actor realizes, or at least has knowledge of sufficient facts that would cause a reasonable man to realize, that a peril exists, for a sufficient time beforehand to give the actor a reasonable opportunity to take means to avoid the injured person's accident; the actor is wanton for recklessly disregarding the danger presented....

*Id.*, 386 Pa.Super. at 607 and 615, 563 A.2d at 895 and 891 (Brosky, J., concurring and dissenting opinion) (emphasis in original) (internal citations omitted).

In view of the above reasoning, if we assume that Ott is a trespasser, then Ott has the burden of proving that USF engaged in willful or wanton misconduct. As applied to this case, it appears that Ott would ask that we find USF's failure to remove snow and ice from their private parking lot willful and wanton. This we decline to do. The most typical example of willful or wanton misconduct is found where a landowner strings a piece of wire or cable over a roadway or path to prevent trespassers from driving over the land. In such cases, the unsuspecting trespassers have often sustained severe or fatal injuries. *See e.g., Graham, supra, Krivijanski v. Union Railroad Co.*, 357 Pa.Super. 196, 515 A.2d 933 (1986), and *Antonace v. Ferri Contracting Co., Inc.*, 320 Pa.Super. 519, 467 A.2d 833 (1983). When read together, these cases do not establish a duty on the part of the possessor to maintain the land; rather they stand for the proposition that the landowner may not intentionally erect structures or devices which will result in severe harm or a risk of death to the trespasser.

*Oswald, supra,* is more analogous to this case than the cases which involve cable or wire strung across a path or

road. In *Oswald,* the plaintiff's decedent drove his vehicle off of the paved highway and proceeded down a private, snow-covered dirt lane until his vehicle became stuck. Plaintiff sought to impose liability on the defendant for failing to maintain the roadway in a reasonably safe condition for travel. On appeal, this court rejected Oswald's argument and declined to hold that the failure to remove snow from a private roadway was an example of willful or wanton misconduct.

For support, appellant relies on cases involving a landowner's duty to maintain sidewalks which border a public roadway, however, she has not referred us to any authority which would require a landowner to maintain his private parking lot free of ice and snow where individuals trespass across it. Accordingly, we see no reason to depart from the approach taken by this court in *Oswald,* and we decline to impose a duty upon a possessor to clear snow and ice from a parking lot for the benefit of trespassers. Because USF owed Ott no duty to remove the snow and ice, the trial court correctly granted USF's motion for summary judgment.

■ However, if we assume that Ott is a licensee, the duty of care is somewhat different. The Restatement (Second) of Torts § 342 describes the duty of care owed to licensees as follows:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if
>
>> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees and should expect that they will not discover or realize the danger, and
>>
>> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

In addition, this court has observed that:

[t]he liability of a possessor of land who invites or permits gratuitous licensees to enter his land, is not based upon his duty to maintain it in safe condition. It is based upon his duty to disclose to them the risk which they will encounter if they accept his invitation or permission. He is required to exercise reasonable care either to make the land as safe as it appears or to disclose the fact that is as dangerous as he knows it to be.

*Oswald, supra,* 386 Pa.Super. at 254, 548 A.2d at 599.

Application of this standard leads us to conclude that even if Ott is a licensee, USF owed no duty to Ott to keep the parking lot free of snow and ice. Ott stated in her deposition that she could see the ice and could distinguish the ice from the bare ground. *See* Deposition of Ott at pp. 8–10. More importantly, Ott testified that she knew that the ice was slippery and that she could slip and fall on the ice and be injured. *See id.* at p. 53. Therefore, based on Ott's own testimony, it is clear that Ott was aware of the hazard, but nevertheless proceeded to encounter it in spite of the fact that an alternative route was readily available to her. Because the condition of the parking lot was made known to Ott and because she was well aware of the risks involved in attempting to cross the ice, we hold that USF owed no duty to Ott, as a licensee, to remove the snow and ice, and therefore, the grant of summary judgment in favor of USF must be affirmed.

The second issue raised by appellant involves the question of whether summary judgment can be granted on the basis of the assumption of the risk defense. Appellant believes that her case should be submitted to the jury under the comparative negligence statute. As recognized by the Supreme Court, "[f]or fault to be apportioned under the comparative negligence statute, there must be two negligent acts: a breach of duty by the defendant to the plaintiff and a failure by the plaintiff to exercise care for his own

protection." *Carrender*, 503 Pa. at 188, 469 A.2d at 125. The comparative negligence act is inapplicable to the facts of this case, however. As discussed above, we found that L & J, as a landlord out-of-possession, owed no duty to Ott. We further held that USF owed no duty to Ott, as either a trespasser or a licensee because the condition of the lot was known and obvious, and because Ott was aware of the risk involved in crossing the icy parking lot. Consequently, if appellees owed no duty to Ott, then *a fortiori* there can be no breach of duty.

If we assume, for the purpose of this discussion only, that appellees did owe a duty to appellant, then the question remains as to whether the assumption of the risk doctrine is applicable. At the present time, there seems to be a question as to whether this defense has been abolished. *See Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 614–616 n. 6, 437 A.2d 1198, 1210–1211 n. 6 (1981) (plurality opinion). However, a majority of the Pennsylvania Supreme Court has yet to directly address the issue of whether the assumption of the risk doctrine remains viable, and panels of this court have continued to apply the doctrine. *See e.g., Malinder v. Jenkins Elevator & Machine Co.*, 371 Pa.Super. 414, 538 A.2d 509 (1988), *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525 (1988), *Johnson by Johnson v. Walker*, 376 Pa.Super. 302, 545 A.2d 947 (1988), *allocatur denied*, 522 Pa. 577, 559 A.2d 38 (1989), and *Howell v. Clyde*, 383 Pa.Super. 611, 557 A.2d 419 (1989).

Generally, a plaintiff will be found to have assumed the risk only where it has been sufficiently demonstrated that he or she " 'fully understands' the specific risk, [and] 'voluntarily chooses' to encounter it, 'under circumstances that manifest a willingness to accept it' ". *Berman, supra*, 374 Pa.Super. at 136, 542 A.2d at 533, quoting *Fish v. Gosnell*, 316 Pa.Super. 565, 576–579, 463 A.2d 1042, 1048–1049 (1983). Ott's deposition in this case more than sufficiently satisfies these requirements. When asked whether she knew if the ice was slippery, or that she could

slip and fall and possibly be injured, Ott unequivocally answered "yes". *See* Deposition of Ott at p. 53. Ott further stated that although an alternative route was available, she chose to cross the parking lot because she felt that it was shorter. *Id.* at pp. 10 and 52. In view of this testimony, we must conclude that Ott fully understood that she could fall on the ice and sustain injury, and that she voluntarily chose to cross the parking lot, even though there was an alternative path available to her. Therefore, if it is assumed that appellees owed a duty to Ott and further assuming that the assumption of the risk defense still exists, we would find that Ott assumed the risk of crossing the parking lot.

In sum, we have found that regardless of whether Ott is treated as a trespasser or licensee, neither appellee owed no duty to remove the snow and ice from the parking lot. L & J owed no duty since it was a landlord who retained no right of control over the parking lot. USF also owed no duty to Ott, as either a trespasser or licensee because the condition of the lot was readily apparent and an alternative route was easily available. Further, we stated that if we were to assume that appellees owed a duty to appellant, then Ott assumed the risk of crossing the lot because she was aware that the ice existed and that she could be injured if she were to fall. Under these circumstances, appellees were entitled to summary judgment, and the order of the trial court must be affirmed.

Order affirmed.